# Edward E. Kelly and Helen E. Kelly *v.* Zoning Board of Adjustment.

Argued February 8, 1971, before President Judge BOWMAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO and MENCER.

138

*Michael H. Egnal,* with him *John David Egnal,* and *Egnal, Simmons & Egnal,* for appellants.

*Carl K. Zucker,* Deputy City Solicitor, with him *Edward G. Bauer, Jr.,* and *Levy Anderson,* City Solicitors for appellee.

MEMORANDUM-OPINION BY JUDGE SLOANE, December 1, 1969:

This is an appeal from the decision of the Zoning Board approving a City Council Ordinance upgrading land from "C-2" Commercial to "R-9A" Residential. The subject tract is within Philadelphia and is bounded by Greenwood Street, Fayette Street, Vernon Road and Michener Street. Despite its trapezoidal shape, the tract is commonly known as the "Vernon Road Triangle".

Appellants are owners of commercial stores located within the Vernon Road triangle. They contend that the reclassification (1) violates zoning policy and property rights by creating nonconforming uses; (2) constitutes invalid spot zoning (3) bears no relation to the public health, safety or welfare.

The inquiry is whether City Council had authority to make this comprehensive reclassification. The scope of judicial review is limited—the court acts neither as

a super-zoning board or master planner of last resort. *Village 2 at New Hope, Inc. Appeals,* 429 Pa. 626. A strong presumption of constitutional validity attends the amendatory zoning ordinance, *Jacobi v. Zoning Board of Adjustment,* 413 Pa. 286, and a heavy burden of proof rests upon parties asserting invalidity or unconstitutionality. *Cleaver v. Board of Adjustment,* 414 Pa. 367.

Appellants make several points in their argument that the reclassification results in an invalid and unconstitutional nonconforming use. They claim the restrictions inherent in the upgraded R-9A zone will cause them undue expense and hardship. For example, the commercial property owners may not convert their premises to other commercial uses. The R-9A classification requires return to residential use once the present commercial use is terminated. Also, a three-year vacancy in the present commercial properties would result in mandatory conversion to residences. Appellants claim these restrictions decrease the value of their properties and deprive them of constitutionally protected "property rights".

This argument misconceives the foundation of zoning law. Appellants have no vested rights in the continuation of a certain zoning classification. *Key Realty Co. Zoning Case,* 408 Pa. 98; *Schmidt v. Philadelphia Zoning Board of Adjustment,* 382 Pa. 521. In *Peterson v. Zoning Board of Adjustment,* 412 Pa. 582, our Supreme Court recognized that a property owner who acquired a tract in reliance upon advice from a municipality that a use was permitted in the zone could not preclude reclassification by the municipality. The zoning designation does not constitute an agreement with the property owners not to upgrade the district. The construction of commercial stores in the Vernon Road triangle was not accomplished by precluding upgrading for future residential classification.

Appellants' second contention that the reclassification is invalid as "spot zoning" is also without merit. As condemned in *Mulac Appeal*, 418 Pa. 207, spot zoning occurs when the tract in question is singled out for treatment differing unjustifiably from that of similar surrounding land, thereby creating an "island" having no relevant differences from its neighbors. Also see *Cleaver v. Board of Adjustment*, 414 Pa. 367. Far from creating an irrelevant zone, the record establishes that this reclassification is aimed at maintaining the residential nature of the neighborhood.

The relationship this reclassification bears to the public health, safety and welfare is attested to by the strong civic support rendered this upgrading. The residents of the neighborhood have a valid interest in seeking to exercise more control over commercial encroachment. The reclassification they support represents their wish to keep this neighborhood residential, and does not deprive commercial property owners of vested rights.

Accordingly, the decision of the Zoning Board is sustained and this appeal is denied and dismissed.

---

OPINION BY JUDGE WILKINSON:

The Court adopts the opinion of Judge SLOANE of the Court of Common Pleas of Philadelphia who heard the case below on the record of the Zoning Board of Adjustment, without additional testimony, and sustained the unanimous decision of the Board.

Because of the able presentation of their brief and oral argument, we would comment on appellants' position. Appellants claim that the action of City Council in reclassifying the subject property from C-2 commercial to R-9A residential was the result of political pressure rather than expert planning. If appellants mean by this position improper pressure from "political leaders" or "politicians", there is nothing in the record to

sustain such a claim. If they mean that the people in the neighborhood, individually, by letter, by petitions, and through their various associations, attended meetings to support the reclassification to R-9A and impressed their views in this matter on their representative in the City Council, then we must say that such actions, far from being improper, are the heart of the democratic representative process. In addition, it happens that in this instance the position of the citizens in the neighborhood supporting reclassification was the same as that of the expert planners, i.e., the City Planning Commission.

Appellants attempt to avoid the prior decisions of the Pennsylvania Supreme and Superior Courts by pointing out that most, if not all, of them involved the reclassification of undeveloped and unimproved land, whereas the land involved in the instant case is developed and improved. We see no distinction in the law as involved in this case other than as the rights of the owners of developed and improved land are protected, *qua* the developments and improvements, by the doctrine of nonconforming use.

For the reasons stated in Judge SLOANE's opinion and the additional comments herein expressed, the order of the court below is affirmed.

CONCURRING OPINION BY JUDGE KRAMER:

I note my concurrence in the result of the opinion of the majority. However, I would also like to note that with regard to any specific issue raised by any of these property owners (of what are now nonconforming uses) who desire to expand their nonconforming use within the meaning of the ruling of the Pennsylvania Supreme Court in the case of *Silver v. Philadelphia Zoning Board of Adjustment*, 435 Pa. 99, 255 A. 2d 506 (1969), I would hold that such an expansion issue does not come within the purview of the majority's

opinion. If any of the present owners of what are now nonconforming uses in what is known as the "Vernon Road Triangle" in the future present an issue concerning the use of their property to some other commercial use, I would reserve those issues to be ruled upon under the facts presented to the court rather than to preclude such determination by the holding of the majority in this case.

---

DISSENTING OPINION BY JUDGE CRUMLISH, JR.:

I dissent. In adopting the opinion of Judge SLOANE of the Court of Common Pleas of Philadelphia, this Court approves his erroneous conclusion that "the record establishes that this reclassification is aimed at maintaining the residential nature of the neighborhood." The findings of the Zoning Board of Adjustment clearly establish that the rezoning of this block was beamed solely to control and maintain the future *commercial* usage of these certain properties.

The rezoning of this area was not an effort to foster residential uses in the rezoned tract. The "Vernon Road trapezoid" referred to for our purposes as the "Vernon Road Triangle" is and has been for decades an entirely commercial block servicing a surrounding residential neighborhood in Philadelphia. The residents of these areas have long been attempting to prevent the establishment of restaurants and bars, pool rooms and similar commercial ventures in this triangle. To this end, they have aggressively campaigned in pursuance of a movement which supported "R-9A Residential" rezoning to "give resident-homeowners more controls to stop unwanted, undesirable businesses along Vernon Road."[1] The salutary effort of community action groups to maintain what they consider quality living conditions is to be admired and encouraged so long as the legiti-

---

[1] Exhibit A-8, Zoning Board of Adjustment.

mate property rights of other citizens are not arbitrarily removed. The findings of the Zoning Board support the conclusion that the purpose for rezoning was indeed to control the types of commercial uses: "9 . . . the properties involved consist of commercial retail stores and the upgrading of the zoning of these properties was to control future use of the said commercial properties. 10. That all of the commercial uses presently existing in the properties which are the subject of this application become nonconforming uses upon the enactment of Bill 122-B and that the uses presently being conducted in them cannot be in any way delineated or infringed upon. 11. That the only restriction that the passage of Bill 122-B would have on the properties which are the subject of this application would be that any change from the present nonconforming uses of the properties would have to come before the Zoning Board of Adjustment for review to determine whether or not the proposed use falls within the criteria for the grant of a variance as provided for under Section 14-1802 of the Code."

Our law does not tolerate "arbitrary, unreasonable or discriminatory" zoning distinctions. *Eller v. Board of Adjustment,* 414 Pa. 1, 198 A. 2d 863 (1964). I have grave doubt as to the reasonableness of any zoning ordinance which makes every use in an area nonconforming. But even if reasonable per se, it becomes patently unreasonable when the avowed purpose in classifying the property residential hides behind a facade and is really intended to restrict some kinds of Commercial or Industrial use. This is where we are today. Our law does not permit our municipalities to discriminatorily label different classifications for its various commerical zones in order to retain strict control of some zones and ignore digression of others. If control such as is attempted by this subterfuge is desired (and we do not say it is not laudatory in purpose), it should be effected

through changes in the commercial district regulations and not through the misapplication of other zoning classifications.

Bill 122-B of the City of Philadelphia was an unreasonable and discriminatory attempt to restrict future commercial uses in the "Vernon Road Triangle" commercial neighborhood. As such it is an unconstitutional abuse of the police power of the City. I would reverse.