Camp Hill Development Co., Inc., Appellant, *v.* Zoning Board of Adjustment, Borough of Dauphin, Dauphin County, Pennsylvania, Appellee, and Dauphin Borough Council, Intervening Appellee.

Argued March 5, 1974, before President Judge BOWMAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

Richard H. Wix, with him Wix & Wenger, for appellant.

David B. Disney, with him McNees, Wallace & Nurick, for intervening appellee.

OPINION BY JUDGE ROGERS, May 9, 1974:

This is an appeal by Camp Hill Development Company, Inc. (Camp Hill) from an order of the Court of Common Pleas of Dauphin County upholding a decision of the Zoning Hearing Board of the Borough of Dauphin refusing Camp Hill's challenge to the validity of the Dauphin Borough Zoning Ordinance and its application for a variance.

Camp Hill seeks to erect a development of 320 single family houses, built in blocks of six or eight, on a 20.5 acre tract located in the R-1 residential zoning district on the Borough's zoning map. These blocks of dwellings would be what used to be called row houses, but embellished and given some individuality are now referred to as townhouses. The proposed dwellings would be two stories in height, contain six rooms and each would be designed to accommodate but one family. The appellant intends to rent them.

The court below took additional evidence and it is therefore our duty to determine whether the lower court committed an error of law or abused its discretion. McKay v. Board of Adjustment, 8 Pa. Commonwealth Ct. 29, 300 A.2d 810 (1973).

We will first refer to the provisions of the Dauphin Borough Zoning Ordinance, adopted in 1948, pertinent to our considerations.

Section 110 defines a dwelling as a building which is designed for or occupied as a home. Sections 111, 112, 113, 114 and 115 respectively, define single family detached dwelling, single family semi-detached dwelling, two-family detached dwelling, two-family semi-detached dwelling, and three-family detached dwelling, all in expected fashion. There is no definition of a single family dwelling.

Section 301 limits permissible uses in the R-1 residential zone to the following: "Single Family Dwellings. Churches, Convents and Parish Houses. Schools, Libraries and Museums. Farming, Gardening, Nurseries and Greenhouses that are not used for commercial purposes. Equipment and facilities of a Public Utility when their erection or use is reasonably necessary for the service, accommodation and convenience of the public and not unreasonably detrimental to the character of the district."

Section 303 regulates open spaces with respect to single family detached dwellings as follows: "In the case of a single family detached dwelling, the building line shall not be less than twenty-five (25) feet from the front property line, nor nearer to a side street than twenty-five (25) feet; There shall be two side yards, one on each side of the main building, and neither side yard shall be less than ten (10) feet wide, provided that in case of a single family detached dwelling constructed with its greater dimension parallel with the front street, a one story porch, garage, bay window, or other projection may not extend further than a point ten (10) feet from the side property line."

Section 401 designates the permitted uses in the R-2 residential district as follows:

"(1) Any uses permitted in R-1 Residential Districts.

(2) Dwellings having not more than one wall in common with other buildings; two-family or three-

family detached dwellings; two-family semi-detached dwellings.

(3) Apartment houses, boarding houses, tourist housing in private homes but excluding tourist cabins and including recreational and community center buildings.

(4) Accessory use on the same lot with and customarily incidental to any of the above permitted uses and not detrimental to a residential neighborhood."

The provisions thus far mentioned seem to provide that single family dwellings, whether detached or semi-detached or whether they have more than one wall in common with other buildings, are permitted in the R-1 residential district; provided that in the case of a single family detached dwelling ten feet wide side yards must be provided. Hence, townhouses are permitted by these provisions in the R-1 district. Since uses permitted in the R-1 residential district are also permitted in the R-2 residential district, townhouses would also seem to be permitted there by Section 401(1) but impliedly prohibited by 401(2).

However, Section 1009 of the Ordinance provides as follows: "Multiple Dwellings—No building shall be constructed or altered so that it will have more than one wall in common with another dwelling."

This provision, which the parties seem to agree prohibits townhouses in the R-1 residential district, occasioned Camp Hill's challenge to the validity of the ordinance and pursuit of a variance.

Camp Hill's challenge to the validity of Section 1009 of Dauphin Borough's Zoning Ordinance is that the provision effects a prohibition of townhouses throughout the Borough and hence violates the holding of *Girsh Appeal*, 437 Pa. 237, 263 A.2d 395 (1970) that a regulation which totally prohibits a legitimate residential use for which there is a demand is unconstitutional. In apparent reaction to the challenge, Borough

Council, a few days before the Zoning Hearing Board filed its opinion and decision in this matter, deleted Section 1009 by amendment to the zoning ordinance. Although this action would appear to us to render townhouses, that is, single family dwellings having more than one wall in common with other buildings, permissible in the R-1 Residence district,[1] Camp Hill curiously argues that we should not consider the amendment; and the Borough equally curiously contends that we should. If the amendment is not to be considered, we are required to decide whether the prohibition of Section 1009 is unconstitutional under the rule of *Girsh*. If the amendment is effective in this litigation, as the Borough argues, the result is that single family dwellings having more than one wall in common with other dwellings is a permitted use in the R-1 district.

Our case of *Casey v. Zoning Hearing Board*, 8 Pa. Commonwealth Ct. 473, 303 A.2d 535 (1973), is controlling and requires that we not consider the amendment deleting Section 1009 of the ordinance. We held in *Casey* that a curative amendment of an ordinance forbidding multi-family dwellings anywhere in a municipality, adopted before any decision in the case, might not be considered. In *Sauer v. Richland Township*, 8 Pa. Commonwealth Ct. 464, 303 A.2d 269 (1973), we held that an amendment adopted after a Zoning Hearing Board had rendered its decision might not be considered in determining the validity of the ordinance. In *Colonial Park for Mobile Homes, Inc. v. Zoning Hearing Board*, 5 Pa. Commonwealth Ct. 594, 290 A.2d 719 (1972), we held that a new and curative zoning ordinance adopted during a 22 month interval between the landowner's application for a then forbidden use and the hearing thereon was to be considered, where the delay in the litigation was as a result of continuances

---

[1] But arguably still prohibited in the R-2 district by 401(2).

requested by the applicant. *Colonial Park* was decided by us on May 5, 1972. Then Section 1009 of the Municipalities Planning Code, Act of July 31, 1968, P.L. 805, empowered courts to stay the effect of a judgment of invalidity of an ordinance for a limited time to give the local governing body an opportunity to amend. That provision of law was repealed by the Act of June 1, 1972, P.L.    , No. 93, effective August 1, 1972 and its replacement, Section 1011, 53 P.S. Section 11011, does not give the courts such power.

Is Section 1009 of the ordinance, prohibiting townhouse construction anywhere in Dauphin Borough, unconstitutional? We believe it is. As in *Girsh Appeal, supra,* the instant ordinance unreasonably fails to provide for a legitimate and needed residential use. The precise issue seems to have been presented for judicial decision only once before and with the same result as we have reached. In *Rickert Nurseries v. Lower Makefield Township Z.H.B.,* 24 Bucks Co. L. Rep. 201 (1973), the Bucks County Common Pleas Court struck down a blanket proscription of townhouse development. We concur in President Judge SATTERTH-WAITE'S comment there made:

"In the instant case, the record is clear that the cluster style of attached townhouses, even though only lately coming into significant use in suburban housing, is now a recognized and established form of residential development, having a relevant place in, and carrying out appropriate functions with respect to, the housing facilities contemplated by modern municipal planners." 24 Bucks Co. L. Rep. at 205.

We have not overlooked and have indeed given careful consideration to the justifications advanced by the Borough for its regulation, including the increase of Borough population which will be caused by this development and the asserted inadequacy of public facilities to accommodate the persons it will bring to

the Borough. These did not, in our view, establish the legitimacy of the prohibition as was the Borough's burden under *Beaver Gasoline Company v. Osborne Borough*, 445 Pa. 571, 285 A.2d 501 (1971). Nor have we neglected the Borough's contention that the *Girsh* rule is not violated because apartments are permitted in the R-2 district, although limited to such as do not have more than one wall in common with another apartment. But, as we noted, townhouses are an accepted form of development entitled, we believe, to the same recognition accorded by *Girsh* to apartments.

Our holding that the then Section 1009 of the Dauphin Borough Zoning Ordinance unlawfully prohibited the construction of townhouses in the Borough and was therefore without effect, makes it unnecessary to discuss Camp Hill's application for a variance based upon alleged unnecessary hardships inflicted by the prohibition as related to its property, beyond stating that we agree with the court below that the contention is without merit.

The order of the court below is reversed, with direction that Camp Hill's application for building permit be granted subject to its compliance with the Borough's zoning, building, subdivision and other regulations generally applicable to the class of construction proposed and not inconsistent with this opinion.