Marvin D. Ellick, Appellant, v. Board of Supervisors of Worcester Township, Appellee.

Argued October 9, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Arsen Kashkashian, Jr.,* for appellant.

*J. Peirce Anderson,* with him *Bean, DeAngelis, Kaufman & Kane,* for appellees.

OPINION BY JUDGE KRAMER, February 11, 1975:

This is an appeal filed by Marvin D. Ellick (Ellick) from an order of the Court of Common Pleas of Montgomery County, dated January 30, 1974. The order dismissed Ellick's appeal and, in effect, affirmed the rejection by the Worcester Township Board of Supervisors (Board)ı of Ellick's "Challenge to the Validity of the Zoning Ordinance of Worcester Township and Request For Curative Amendment" (hereinafter "challenge").

Ellick is the owner of a 40-acre tract of land located in Worcester Township (Township). Ellick's land is currently zoned "AGR-agricultural," which limits non-agricultural uses to lots of 60,000 square feet. Ellick desires to build 280 townhouses on his property. On April 14, 1973, Ellick filed his challenge with the Board pursuant to section 1004(1)(b) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §11004(1)(b).[1] The challenge, among other things, alleges that "[t]own houses for sale are excluded from every portion of the Township of Worcester." Another allegation of the challenge is that there is a need for moderately priced dwellings which can be best provided by cluster-type townhouses such as those proposed by Ellick. The challenge includes a request for a curative amendment which would amend the Township's zoning ordinance so as to permit the construction of Ellick's proposed townhouses.

A hearing on Ellick's challenge was held before the Board on July 30, 1973. There was an unavoidable delay in transcribing the notes of testimony, and the parties

---

1. The MPC was substantially amended by the Act of June 1, 1972, P.L. —, No. 93 (effective August 1, 1972).

agreed that the Board would have 30 days from the receipt of the transcript to make its adjudication. The Board received the transcript on September 20, 1973, but failed to act within the 30-day period prescribed by section 1004(4)(iii) of the MPC, 53 P.S. §11004(4)(iii), and, therefore, the challenge was deemed to have been denied. Ellick filed a timely appeal to the court below on October 23, 1973. The lower court neither took additional testimony nor received additional evidence, and on January 30, 1974, it dismissed Ellick's appeal. Following Ellick's appeal to this Court, the lower court on April 1, 1974, filed an opinion in support of its January 30, 1974 order. The court decided that the ordinance does not totally prohibit townhouses because they could be built as "apartment houses" in R-150 Residential districts.

In his appeal to this Court, Ellick argues that the Township zoning ordinance is invalid because it unconstitutionally prohibits townhouses anywhere in the Township. *See Girsh Appeal,* 437 Pa. 237, 263 A.2d 395 (1970). He contends that since he presented proof that the ordinance prohibits townhouses, the burden was on the Board to prove that the prohibition is for a legitimate public purpose and bears a relationship to the public health, safety, morals and general welfare. *See Beaver Gasoline Company v. Osborne Borough,* 445 Pa. 571, 285 A.2d 501 (1971). He also argues that the present zoning restrictions applicable to his property are unreasonable and confiscatory. By contrast, the Township argues that its ordinance does not prohibit townhouses because they are a permitted use as "apartment houses" in R-150 Residential districts. The Township argues that its ordinance regulates the use rather than the ownership of property, and that under the ordinance Ellick could build townhouses in an R-150 Residential district and sell them as condominiums or in fee simple.

The instant case is the first time[2] this Court has dealt with a challenge to the validity of a zoning ordinance pursuant to section 1004(1)(b) of the MPC, *as amended in 1972*, 53 P.S. §11004(1)(b). The present section 1004[3]

2. While we recognize that we made reference to section 1004 in *Township of Neville v. Exxon Corporation*, 14 Pa. Commonwealth Ct. 225, 322 A. 2d 144 (1974), we did not there fully analyze the import of this section and did not deem it to be significant in the disposition of that case.

3. To assist in a better understanding of this case, we set forth section 1004: "(1) A landowner who, on substantive grounds, desires to challenge the validity of an ordinance or map or any provision thereof which prohibits or restricts the use or development of land in which he has an interest shall submit the challenge either: (a) To the zoning hearing board for a report thereon under section 910 or 913.1; or (b) To the governing body together with a request for a curative amendment under section 609.1.

"(2) The submissions referred to in subsection (1) shall be governed by the following: (a) The landowner shall make a written request to the board or governing body that it hold a hearing on his challenge. The request shall contain a short statement reasonably informing the board or the governing body of the matters that are in issue and the grounds for the challenge. (b) The request may be submitted at any time after the ordinance or map takes effect but if an application for a permit or approval is denied thereunder, the request shall be made not later than the time provided for appeal from the denial thereof. In such case, if the landowner elects to make the request to the governing body and the request is timely, the time within which he may seek review of the denial of the permit or approval on other issues shall not begin to run until the request to the governing body is finally disposed of. (c) The request shall be accompanied by plans and other materials describing the use or development proposed by the landowner in lieu of the use or development permitted by the challenged ordinance or map. Such plans and other materials shall not be required to meet the standards prescribed for preliminary, tentative or final approval or for the issuance of a permit so long as they provide reasonable notice of the proposed use or development and a sufficient basis for evaluating the challenged ordinance or map in the light thereof. Nothing contained herein shall preclude the landowner from first seeking a final permit or approval before submitting his challenge to the board or governing body. (d) If the submission

was added to the MPC by the 1972 amendments which effected considerable change, both procedurally and substantively, in the MPC. Because the 1972 amendments are somewhat complex, and we notice an increasing number of appeals related thereto, we believe it will be helpful to all concerned to set forth some guidelines to aid in the disposition of the type of case now facing us.

---

is made to the governing body under subsection (1) (b), the request shall be accompanied by an amendment or amendments to the ordinance proposed by the landowner to cure the alleged defects therein. (e) Notice of the hearing required by sections 609.1, 910, or 913.1, whichever is applicable, shall include notice that the validity of the ordinance or map is in question and shall give the place where and the times when a copy of the landowner's request, .including the plans submitted pursuant to subsection (2) (c) and the proposed amendments, if any, submitted under subsection (2) (d) may be examined by the public. (f) The board or the governing body, as the case may be, shall hold a hearing upon the landowner's request pursuant to sections 609.1, 910, or 913.1, whichever is applicable, commencing not later than sixty days after the request is filed unless the landowner requests or consents to an extension of time.

"(3) After submitting his challenge to the board or governing body as provided in subsections (1) and (2) of this section, the landowner may appeal to court by filing same within thirty days (i) after notice of the report of the board is issued, or (ii) after the governing body has denied the landowner's request for a curative amendment as provided in subsection (4). Failure to appeal the denial of a request for a curative amendment under clause (ii), shall not preclude the landowner from thereafter presenting the same validity questions by commencing a proceeding as provided in subsection (1) (a) of this section.

"(4) For purposes of subsection (3) (ii), the landowner's request for a curative amendment is denied when (i) the governing body notifies the landowner that it will not adopt the amendment, or (ii) the governing body adopts another amendment which is unacceptable to the landowner, or (iii) the governing body fails to act on the landowner's request, in which event the denial is deemed to have occurred on the thirtieth day after the close of the last hearing on the request unless the time is extended by mutual consent between the landowner and the municipality." (Footnotes omitted.)

Initially we believe it important to note that the general principles of law relating to challenges to zoning ordinances have not changed. A zoning ordinance is still presumed valid and constitutional, and anyone challenging an ordinance has a heavy burden of proving otherwise. *See Surrick v. Zoning Hearing Board of the Township of Upper Providence*, 11 Pa. Commonwealth Ct. 607, 314 A.2d 565 (1974) ; *Hodge v. Zoning Hearing Board of West Bradford Township*, 11 Pa. Commonwealth Ct. 311, 312 A.2d 813 (1973). When an individual challenging a zoning ordinance proves a total prohibition of an otherwise lawful use, the burden shifts to the municipality to prove that such prohibition bears a relationship to the public health, safety, morals and general welfare. *See Beaver Gasoline Company, supra; Amerada Hess Corporation v. Zoning Board of Adjustment*, 11 Pa. Commonwealth Ct. 115, 313 A.2d 787 (1973). The law concerning variances and special exceptions has not changed.

Prior to the 1972 amendments, a landowner could challenge the validity of a zoning ordinance either at the time of its passage or later by filing an application for a zoning permit, and the variances and special exceptions incidental thereto.

Section 1004(1) of the MPC, 53 P.S. §11004(1) now provides two additional methods for a landowner to challenge a zoning ordinance. He may submit his challenge to the zoning hearing board, or he may submit it to the governing body together with a request for a curative amendment under section 609.1 of the MPC, 53 P.S. §10609.1. Section 1004(2)(c) of the MPC, 53 P.S. §11004(2)(c) provides that a challenge to a zoning ordinance by either method "shall be accompanied by *plans and other materials* describing the use of development proposed by the landowner in lieu of the use or development permitted by the challenged ordinance or map." (Emphasis added.) The "plans and other materials" submitted need not meet the more stringent standards neces-

sary to obtain a building permit, so long as they provide reasonable notice to the governing body of the proposed use or development. Section 1004(2)(c) of the MPC, 53 P.S. §11004(2)(c).

In the instant case, Ellick chose to submit his challenge to the governing body. Section 1004, 53 P.S. §11004, directs the governing body to hold a hearing to consider the challenge and request for a curative amendment. If the governing body determines that its ordinance is defective, it may amend the ordinance by accepting the proposed curative amendment, or a variation thereof. While recognizing the potential problems which may thus arise, we do not decide in this case what happens if the governing body adopts a curative amendment different from the one which was proposed by the landowner. We are quite certain, however, that the 1972 amendments to the MPC do not in any way interfere with the governing body's power to amend its zoning ordinance in a manner which the governing body believes will best further legally the public interest. To reiterate, if it finds that its ordinance is defective, the governing body may choose to cure the defect by an amendment other than that proposed by the challenging landowner. However, we must caution governing bodies that they cannot adopt or pass a curative amendment which would frustrate the challenging landowner, as was attempted in the *Girsh* case, *supra*. *See* the recent opinion of our Supreme Court in *Casey v. Zoning Hearing Board of Warwick Township*, — Pa. —, 328 A.2d 464 (1974).

It is clear, under the 1972 amendments, that if a governing body determines that its ordinance is defective, because it totally prohibits the use proposed by the challenging landowner, then the governing body must permit the challenging landowner to develop his land as proposed in the "plans and other materials" submitted with the challenge, provided, of course, that what is submitted is reasonable, and not injurious to the public

health, safety, welfare and morals. The governing body may not totally prohibit the successful challenger's proposed development nor may it subject the proposed development to unreasonable and burdensome restrictions. *See Casey, supra.* The governing body may, however, subject the landowner's submitted plans to reasonable restrictions as may be otherwise properly provided for in its ordinance. To put it another way, the successful challenger will still be required to abide by all of the reasonable building requirements, density restrictions, safety measures, sewage regulations, and water requirements, as well as all other reasonable zoning, building, subdivision and other regulations generally applicable to the class of use or construction proposed by the landowner. By class of usage here, we mean those classes which are usually found in zoning ordinances such as residential, agricultural, commercial, and industrial.

Section 1004(3) of the MPC, 53 P.S. §11004(3) provides that if a governing body denies a landowner's challenge and request for curative amendment, or fails to act within 30 days of the last hearing, then the landowner may appeal to the court of common pleas. The 1972 amendments to the MPC do not require the governing body to render a written decision in this type of case; and this, of course, may make the task of the courts more difficult on appeal. In any event, section 1010 of the MPC, 53 P.S. §11010, provides that a court of common pleas, within its discretion, may require the presentation of additional evidence but that the court may not remand an appeal brought pursuant to section 1004 for another hearing on the legality of the ordinance or to reconsider the curative amendment. If the governing body has made findings of fact and the court does not take additional evidence, then the court may not disturb the findings if they are supported by substantial evidence. If the governing body has not made findings of fact or if the court

takes additional evidence, then the court will[4] make its own findings of fact based on the record submitted, as supplemented by any additional evidence. *See* section 1010 of the MPC, 53 §11010.

In the instant case, although the lower court rendered an opinion, it did not follow the time-honored practice of setting forth specific findings of fact and conclusions of law. Our reading of the lower court's opinion, however, permits us to conclude that there are statements therein which constitute findings of fact sufficient for our review in this appeal. We wish to note, however, that this type of case is inherently complicated, and that specific findings of fact and conclusions of law would be quite helpful to this Court on appeal.

Section 1011 of the MPC, 53 P.S. §11011, sets forth the power of the courts to grant relief in this type of case. It reads as follows: "(1) In a zoning appeal the court shall have power to declare any ordinance or map invalid and to set aside or modify any action, decision or order of the governing body, agency or officer of the municipality brought up on appeal. (2) If the court finds that an ordinance or map or a decision or order thereunder which has been brought up for review unlawfully prevents or restricts a development or use which has been described by the landowner through plans and other materials submitted to the governing body, agency or officer of the municipality whose action or failure to act is in question on the appeal, it may order the described development or use approved as to all elements or it may order it approved as to some elements and refer other elements to the governing body, agency or officer having jurisdiction thereof for further proceedings, including the adoption of alternative restrictions, in accordance

---

4. While a literal reading of section 1010 of the MPC, 53 P.S. §11010, does not appear to require the lower court to make findings of fact, common sense dictates that someone must make findings of fact for purposes of appellate court review.

with the court's opinion and order. The court shall retain jurisdiction of the appeal during the pendency of any such further proceedings and may, upon motion of the landowner, issue such supplementary orders as it deems necessary to protect the rights of the landowner as declared in its opinion and order. (3) The fact that the plans and other materials referred to in subsection (1) are not in a form or are not accompanied by other submissions which are required for final approval of the development or use in question or for the issuance of permits shall not prevent the court from granting the definitive relief authorized in subsection (2) and the court may act upon preliminary or sketch plans by framing its decree to take into account the need for further submissions before final approval is granted." (Footnote omitted.)

A reading of section 1011 of the MPC permits one to conclude that the Legislature, through the 1972 amendments, has imposed upon the courts of common pleas broad and burdensome duties and authority. In effect, the Legislature has directed those courts to act as administrative bodies (as super zoning boards of adjustment) which the appellate courts in this Commonwealth have stated many times is not a proper judicial function.[5] We believe that social and economic problems of society presented in zoning cases should properly be resolved by the legislative and executive branches of government

---

5. The traditional view has been that the responsibility for zoning rests with the municipality involved rather than the courts, and that therefore courts should not act as super zoning boards of adjustment or master planners of the last resort. *See Clawson v. Harborcreek Zoning Hearing Board*, 9 Pa. Commonwealth Ct. 124, 304 A.2d 184 (1973) ; *Trinity Evangelical Lutheran Church v. City Council of Harrisburg*, 2 Pa. Commonwealth Ct. 222, 278 A.2d 372 (1971) ; *Kelly v. Zoning Board of Adjustment*, 2 Pa. Commonwealth Ct. 136, 276 A.2d 569 (1972) ; *Robert Louis Corporation v. Board of Adjustment of Radnor Township*, 1 Pa. Commonwealth Ct. 292, 274 A.2d 551 (1971).

rather than by the courts. Courts are intended to decide cases on the facts and the law presented, and were never intended to dictate legislative matters (e.g. reasonable side-yard dimensions) as may be involved in challenging landowners' plans. Nonetheless we may not disregard the intent of the Legislature which is expressed in the MPC.

Although section 1011 of the MPC, 53 P.S. §11011, gives the courts broad powers in this type of case, we do not believe that it gives the court any power to control the governing body's disposition of the proposed curative amendment. As we read the 1972 amendments, the Legislature intended the proposed curative amendment to be merely an offer or suggestion to the governing body which will aid it in any attempt it may desire to make to cure a defective ordinance. The actual amending of the zoning ordinance is a purely legislative function which the courts have no power to direct. After the governing body acts in a manner not acceptable to the landowner, or refuses to act on a curative amendment, and the matter is appealed to the courts, the curative amendment is no longer a viable matter at issue before the court. It is the duty of the courts of common pleas to decide the purely legal question of whether the challenged zoning ordinance is legal or constitutional; but, if the court decides the ordinance is illegal or unconstitutional, it may not control the manner in which or the extent to which the ordinance is to be amended.

If the court of common pleas determines that an ordinance is invalid as a matter of law, then it is the court's duty to review the governing body's action, if any, with respect to the "plans and other materials" submitted with the landowner's challenge. As the Supreme Court noted in *Casey, supra*, the courts must go beyond mere invalidation and grant definitive relief. It would be grossly inequitable to reject a successful challenger's reasonable development, considering the time and effort which must

be invested in such a challenge. Section 1011 of the MPC, 53 P.S. §11011, gives the court virtually unlimited power of review over the plans submitted. The court may order the plans submitted by the landowner approved as to all of its "elements," or order it approved as to some of them. It may refer some of the elements of the plans to the governing body and it may even disapprove the plan entirely. The court may even refer the "plans and other material," or parts thereof back to the governing body for disposition; but it may not remand, as we have noted, the challenge to the legality of the ordinance or the curative amendment. The court is directed by the statute to retain jurisdiction during the pendency of further proceedings and to issue, upon motion of the landowner, such supplementary orders as it deems necessary to protect the rights of the landowner.

We do not believe the 1972 amendments require a court of common pleas to undertake any responsibility for changing the plans of the landowner by order of court. In other words, it is not the responsibility of the courts of common pleas to modify or redesign landowners' plans, but rather only to rule upon what is presented to the court. We do not believe it would be proper for the court of common pleas to go beyond the record and formulate such reasonable zoning regulations as the court believes should be applicable. Rather we believe the function of the court is to pass upon the reasonableness of the restrictions present in the record, including both the restrictions contained in the landowner's plans and the restrictions present in the ordinance which are applicable to the same class of usage or construction. If the court finds that none of the restrictions present in the record are reasonable, then we believe the proper course would be to remand to the governing body for the formulation of reasonable restrictions, which would then be subject to review. In carrying out its responsibilities, the courts of common pleas may order the landowner's plans,

or portions of them, to be approved subject to the otherwise legal zoning regulations in the ordinance, (which has been found to be defective) which may be applicable to the same class of usage or construction. For example, if a court determines that an ordinance is defective because of total prohibition of townhouses, then it would be proper to approve the plan of the landowner subject to all of the other zoning regulations and provisions of the ordinance applicable to residential usage insofar as they are reasonably adaptable to townhouses.

When considering successful challenges, lower courts will be forced to analyze zoning ordinances in order to determine which provisions of the ordinance are reasonably adaptable to the proposed plans. Once again, while we recognize that this is burdensome to the courts below, we must recognize that the statute imposes this burden upon them. If the landowner believes that the determination of the lower court has resulted in an abuse of discretion or an error of law, the landowner then will be permitted to appeal to this Court for review. It also follows, of course, that if the governing body abuses its discretion in passing upon the plans after remand for that purpose, the challenging landowner will be permitted to appeal to the lower court.

As a result of our discussion in this case, we hope municipalities throughout this Commonwealth will carefully read the 1972 amendments to the MPC, and review their respective zoning ordinances for the purpose of correcting any defects. A municipality with a defective ordinance runs the risk that a landowner will successfully challenge the ordinance and be permitted to proceed with a development which may be quite contrary to the intent of the governing body, its defective ordinance and the comprehensive plan. We recognize that only time and many court opinions will determine the ultimate effect of the 1972 amendments on zoning in the Commonwealth, but hopefully the effect will be to dis-

courage improper exclusionary zoning without unduly interfering with the ability of municipalities to develop in accordance with their comprehensive zoning plans.

Insofar as our scope of review in this type of case is concerned, we believe that we are required to review the action of the lower court to determine whether the court abused its discretion or committed an error of law. In the instant case we must review the determination of the lower court that the ordinance is valid because it permits townhouses in "R-150 Residential Districts." The record indicates that the Township's zoning ordinance has no specific provisions relating to townhouses. The ordinance does, however, permit apartment houses in R-150 Residential districts. An apartment house is defined in the ordinance as follows: "A building designed for and occupied exclusively as a residence for three, or more families, living independently of one another. *A basement in an apartment house shall not contain habitable rooms except as janitor's living quarters."* (Emphasis added.)

The ordinance contains the following provision regulating the length and depth of apartment houses: "The greatest dimension in length or depth of a one, two or three story apartment building shall not exceed one hundred sixty (160) feet. *No more than three such buildings may be attached to each other. Buildings so attached shall be at an angle approximating ninety (90°) degrees unless authorized as a special exception."* (Emphasis added.)

An apartment house also falls within the ordinance's definition of "dwelling" which is "[a] building designed for and used exclusively for residential purposes. . . ." The ordinance provides for single family dwellings, two family dwellings and multiple dwellings. The ordinance defines "multiple dwelling" as follows: "A building not a single family dwelling nor a two family dwelling designed for and occupied exclusively for dwelling purposes by three or more families living independently of

one another, *not a row house, but customarily called an Apartment House."* (Emphasis added.)

The Township contends that although townhouses are not mentioned in the ordinance, they are permitted as apartment houses in R-150 Residential districts. We cannot agree with the Township's position because the language of the ordinance makes it quite clear that the Township did not intend to include townhouse in its definition of an apartment house.

Recently this Court had occasion to pass upon the meaning of the term "townhouse." In *Camp Hill Development Co., Inc. v. Zoning Board of Adjustment, Borough of Dauphin,* 13 Pa. Commonwealth Ct. 519, 319 A.2d 197 (1974), Judge ROGERS stated: "Camp Hill seeks to erect a development of 320 single family houses, built in blocks of six or eight, on a 20.5 acre tract located in the R-1 residential zoning district on the Borough's zoning map. These blocks of dwellings would be what used to be called *row houses,* but embellished and given some individuality are now referred to as *townhouses."* (Emphasis added.) 13 Pa. Commonwealth Ct. at 520, 319 A.2d at 198.

Judge ROGERS concluded in *Camp Hill* that "[t]ownhouses are an accepted form of development entitled, we believe, to the same recognition accorded by Girsh [supra] to apartments." 13 Pa. Commonwealth Ct. at 525, 319 A.2d at 200. In *Camp Hill,* we cited with approval *Rickert Nurseries v. Lower Makefield Township Zoning Hearing Board,* 24 Bucks 201 (1973), where President Judge SATTERTHWAITE stated pertinently: "[T]he record is clear that the cluster style of attached townhouses, even though only lately coming into significant use in suburban housing, is now a recognized and established form of residential development, having a relevant place in, and carrying out appropriate functions with respect to, the housing facilities contemplated by modern municipal planners . . . .

"Further, the record here is also clear that the cluster style development of attached dwelling houses under consideration, with its *essential scheme of small individual lots* set in the larger background of at least partially compensating open areas under cooperative or community type of administration and control, would be totally and entirely precluded anywhere in the township. . . . Accordingly, we conclude that the Girsh [supra] and Beaver Gasoline Company [supra] principles apply." (Emphasis added.) 24 Bucks at 205-206.

The point in citing these opinions is to highlight the fact that townhouses are the same as row houses, but with more modern design. We agree with Ellick's contention that an ordinance which completely bans townhouses is defective. The court below was willing to accept the Township's contention that townhouses were somehow included within the zoning ordinance's definition of an apartment house. With this we cannot agree. The fact that the Township recognizes the difference between a "row house" and an "apartment house" is made clear by reference to the definition of "multiple dwelling," quoted above. Also, the ordinance provides that a basement in an apartment house shall not contain habitable rooms except as janitor's living quarters, that no more than three apartment houses shall be attached to each other and that buildings so attached must be at an angle approximating ninety degrees unless authorized as a special exception. All of these provisions are incompatible with townhouse development. We hold that the ordinance in question, on its face, totally prohibits townhouses, a legitimate and needed residential use and that, therefore, it is invalid under the Pennsylvania Supreme Court's holding in *Girsh, supra*. As a result, we must reverse.

In view of this result, this entire matter must be remanded to the court below for the purpose of determining whether the plans and other materials submitted by Ellick should be ordered approved in whole or in part.

This matter rests within the discretion of the court below under the provisions of sections 1010 and 1011 of the MPC, 53 P.S. §§11010-11011. We therefore

## ORDER

AND NOW, this 11th day of February, 1975, the order of the Court of Common Pleas of Montgomery County dated January 30, 1974 in the above-captioned matter is hereby reversed, and it is ordered that the entire matter be remanded to the court below for disposition under the provisions of sections 1010 and 1011 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, 53 P.S. §§11010-11011, not inconsistent with the opinion set forth above.