Hammermill Paper Company, Appellant *v.* Greene Township, the Board of Supervisors of Greene Township and Quentin J. Kellog, the Zoning Administrator of Greene Township, Appellees.

Argued May 3, 1978, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers and Blatt. Judge DiSalle did not participate.

*Irving Murphy,* with him *MacDonald, Illig, Jones & Britton,* for appellant.

*William T. Jorden,* with him *Christine Hall Mc-Clure,* and *McClure, Dart, Miller, Kelleher & White,* for appellees.

OPINION BY JUDGE CRUMLISH, JR., December 13, 1978:

Hammermill Paper Company's application for a building permit and its request for a curative amendment to Greene Township's zoning ordinance which was filed pursuant to Section 1004 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §11004, were denied by the Board of Supervisors of Greene Township. An appeal of this decision was dismissed by the Court of Common Pleas.

The relevant facts as found by the court below and as substantiated by the record are as follows:[1]

1. Prior to passage of the [Solid Waste Management Act, Act of July 31, 1968, P.L. 788, as amended, 35 P.S. §6001 et seq. (Act)], Hammermill Paper Company had been disposing of its solid waste material, principally flyash, at two sites, one in the City of Erie and one at Lowville in rural Erie County. . . .

2. After passage of the Act Hammermill began to look for a different site and settled upon a tract of land located on Etter Road in Greene Township as being most likely to meet

---

[1] The lower court found the record produced by the Township Board of Supervisors, including its findings of fact and conclusions of law, to be insufficient to resolve the legal issues raised on appeal, and under the authority of *Ellick v. Board of Supervisors of Worcester Township,* 17 Pa. Commonwealth Ct. 404, 333 A.2d 239 (1975), made its own findings of fact.

DER's requirements for a solid waste management permit. . . .

3. On or about October 10, 1972 Hammermill filed with DER an application for a solid waste disposal permit which was preliminarily approved on October 31, 1972. . . .

4. Based upon this preliminary DER approval Hammermill acquired the Etter Road site for $76,000.00 and between October, 1972 and September, 1973 invested about $20,000.00 into the site for an access road and test wells. The proposed landfill would occupy about 15 acres of land. . . .

5. On March 29, 1973 DER issued to Hammermill and its disposal contractors, Adam W. Nicholson, Inc. a solid waste permit for the Etter Road site. . . .

6. On April 10, 1973 Hammermill applied to Greene Township for a refuse disposal permit, but this application was denied on September 14, 1973 because the Etter Road site was zoned agricultural and this use of the site as a landfill would have been inconsistent with Greene Township's 1967 zoning ordinance. . . . [No appeal was taken from that denial.]

7. Three years later on October 13, 1976 Hammermill renewed its application for a refuse disposal permit together with a land use permit from the township. . . .

8. On October 18, 1976 this renewed application was denied for the reason that the Etter Road site was zoned agricultural and under the Greene Township 1967 zoning ordinance a landfill was not a permitted use in an agricultural district. . . . No appeal was taken from the denial of this application.

9. On October 19, 1976 the Greene Township zoning ordinance was amended effective October 24, 1976 to allow solid waste landfills as a conditional use in an industrial district within the township. . . .

10. On November 11, 1976 Hammermill filed[2] with the supervisors of Greene Township

[2] Because this challenge was filed within thirty days of the denial of Hammermill's request for a land use permit, the challenge was timely. See Rittner v. Zoning Hearing Board, [31] Pa. Cmnwlth. [61], 375 A.2d 827 (1977); MPC, Sec. 1004, 53 P.S. 11004(2)(6).

a substantive challenge to both the 1967 and 1976 zoning ordinances by requesting a curative amendment.[3]

[3] Hammermill's challenge was accompanied by a proposed curative amendment along with plans for the use of the proposed landfill. This would satisfy MPC, Sec. 1004(2)(c), 53 P.S. 11004(2)(c). See Connelly v. Bd. of Supervisors of Highland Township, 19 Pa. Cmnwlth. 110, 340 A.2d 597 (1975).

11. The industrial district of Greene Township within which a solid waste landfill is a conditional use consists of 156 acres near the northern boundary of the township . . . , out of a total township acreage of approximately 24,-448 acres.

. . . .

15. A geological survey of this industrial district indicates that the [sixty-six] residences surrounding the district are serviced by individual wells some of which would be threatened by ground water pollution likely to result from a landfill on the industrial district because of the poor drainage qualities of the soil.

16. Operation of a landfill in the industrial district is likely to . . . [be] detrimental to the water supply of some residences.

17. A fifty-one acre parcel . . . of the 156 acre industrial district as [privately] owned . . . and is not now [available] for sale.

18. Technologically a landfill could be located in the industrial district by the use of impermeable liners. . . .

19. . . . [F]lyash is particularly contaminating when exposed to water. . . .

20. DER has made no test of the industrial district to determine its approvability for a solid waste permit, and would not deny a permit solely on the basis of residence on the perimeter.

Hammermill first urges that its attack on the Township's zoning scheme must be directed at the 1967 zoning ordinances which was in effect when it applied for its refuse disposal permit, and not at the amended ordinance which was adopted on October 19, 1976, and in effect when it made its challenge under Section 1004 of the MPC, 53 P.S. §11004. Secondly, it argues that even if the amended ordinance is deemed to govern the appeal, its challenge must nevertheless succeed because that ordinance works a de facto exclusion of landfills.

The Township's opposing contention is that it is the ordinance in effect as of the date of the filing of the challenge and curative amendment, and not the date of the application for land use and refuse disposal permit, which controls the disposition of the challenge. Further, it asserts that the de facto exclusionary doctrine should not be extended to industrial uses, and, alternatively, that its amended ordinance is valid and non-exclusionary.

We have repeatedly held that Section 1004 of the MPC, 53 P.S. §11004, is the exclusive means by which to substantively challenge a zoning ordinance. *See In Re: Appeal of GFM Associates,* 30 Pa. Commonwealth Ct. 476, 373 A.2d 1370 (1977). *See also Ellick v. Board of Supervisors of Worcester Township,* 17 Pa. Commonwealth Ct. 404, 333 A.2d 239 (1975). Section 1004 provides in pertinent part:

(1) A landowner who, on *substantive grounds,* desires to challenge the validity of an ordinance or map or any provision thereof which prohibits or restricts the use or development of land in which he has an interest *shall* submit the challenge either:

(a) To the zoning hearing board for a report thereon under section 910 [53 P.S. §10910] or 913.1 [53 P.S. §10913.1]; or

(b) To the governing body together with a request for a curative amendment under section 609.1 [53 P.S. §10609.1]. (Emphasis added.)

Because this section provides alternate avenues of attack, either one of two dates will control the disposition of a substantive challenge; viz, the date on which a challenge is submitted to the zoning hearing board, or the date on which the challenge, together with a curative amendment is submitted to the governing body. These dates and only these dates control.

As we noted in *GFM Associates, supra,* one of the principal purposes of making Section 1004 of the MPC the exclusive means by which a substantive challenge may be allowed is to insure that a municipality had sufficient "notice" that such challenge was being made.[2] *See also The Board of Commissioners of Mc-*

---

[2] Also, we have noted that Section 1001 of the MPC, 53 P.S. §11001, states that

*Candless Township v. Beho Development Co.*, 16 Pa. Commonwealth Ct. 448, 332 A.2d 848 (1975). At no time during the period in which the Township's zoning scheme was admittedly exclusionary did Hammermill bring a "substantive challenge" to impart this notice. Its requests for a refuse disposal permit and a land use permit were no more than applications to utilize its property for landfill purposes, and the Township's only duty was to determine whether that use was permitted by its zoning scheme. Hammermill in fact made no "substantive challenge" to the defective ordinance until after the defect was cured by an amendatory ordinance. At that time, Hammermill's rights under the amended zoning scheme were fixed. It could no longer complain of the deficiencies of a prior ordinance which had been properly cured. *See Warminster Township v. Kessler,* 16 Pa. Commonwealth Ct. 67, 329 A.2d 316 (1974). Accordingly, the amended ordinance, and it alone, controls the disposition of Hammermill's challenge.

Hammermill next argues that the de facto exclusionary doctrine should be extended to industrial uses. That doctrine was intended to foster regional growth by requiring communities located on the fringes of the metropolitan areas to absorb the "increased responsibility" and "economic burdens" which time and natural growth invariably bring. *See National Land and Investment Co. v. Easttown Township Board of Adjustment,* 419 Pa. 504, 215 A.2d 597 (1965). In *Sullivan v. Board of Supervisors of Lower Makefield Township*, 22 Pa. Commonwealth Ct. 318, 348 A.2d 464 (1975), we applied the doctrine to commercial uses, recognizing that commercial development bore a

The proceedings set forth in this article shall constitute the exclusive mode for securing review of any ordinance, decision, determination or order of the governing body of a municipality, its agencies or officers adopted or issued pursuant to this act.

definite relationship to residential development. Although there is a more tenuous relationship between residential development and industrial development, we can perceive no jusifiable reason to restrict the application of the doctrine.

Sanitary landfills are permitted by the amended ordinance as a conditional use in an industrial zoned area which comprises approximately .6% of the total Township acreage. Hammermill's property is not within this tract. The Township's approval of individual sites must be obtained before a refuse disposal permit will be issued by the Commonwealth's Department of Environmental Resources (DER).

Hammermill argues that, although the amended zoning scheme provides for landfills, the development of landfills is practically and economically unfeasible because the land in the industrial zone is located in an area with a high water table and it is surrounded by approximately 60 residential properties which rely exclusively on well water for their water supply. Hammermill *speculates* that DER's approval of a refuse disposal permit for this area could never be secured and complains that the cost of development engendered by these characteristics are prohibitive and unreasonable.[3]

Relying on *Benham v. Board of Supervisors of Middletown Township*, 22 Pa. Commonwealth Ct. 245, 349 A.2d 484 (1975), the lower court concluded that Hammermill failed to sustain its burden of proving a de facto exclusion of landfills throughout the Township,[4] and wrote in part as follows:

---

[3] The record shows that the development of a landfill in an area with these characteristics would require the construction of an impermeable membrane around the landfill and the ceiling of ground water.

[4] When a challenger alleges that there is de facto exclusionary zoning, he carries the heavy burden of showing that even though on

On this record we cannot conclude that DER would not issue a solid waste disposal permit for a landfill to be operated in the industrial district. No examination of this district was made by DER. Landfills can be constructed with liners to guard against contamination by pollutants. . . . Nothing in this record indicates that such a facility is not feasible in the industrial district.

We agree.[5]

The record confirms that development of a landfill on the site(s) designated by the Township would be more difficult and costly than development of Hammermill's Etter Road site. It did not establish, however, that the Township's site selection and conditional use criteria are so unreasonable as to effectively prohibit development of landfills throughout the Township.

Hammermill's contentions that the physical characteristics of the land and the industrial zone precludes DER's grant of a refuse disposal permit is mere conjecture.

The lower court's conclusion that Hammermill has failed to sustain its burden is supported by the record. We can find no abuse of discretion or an error of law and we, therefore, must affirm.

Accordingly, we

---

its face an ordinance permits a specific use, the ordinance as applied effectively prohibits such use. *See Benham, supra.*

[5] In a zoning case where the court below took additional evidence, our scope of review is to determine whether or not the lower court abused its discretion or committed an error of law. *See Citizens For a Clean Environment v. The Zoning Hearing Board of Hanover Township*, 23 Pa. Commonwealth Ct. 12, 350 A.2d 419 (1976).

222

ORDER

AND Now, this 13th day of December, 1978, the order of the Court of Common Pleas of Erie County is affirmed.