George Martorano et al. *v.* The Board of Commissioners of Cheltenham Township et al. Board of Commissioners of Cheltenham Township of Montgomery County, Pennsylvania, and Melrose Park Improvement Association, Appellants.

Argued April 9, 1980, before President Judge CRUMLISH and Judges CRAIG and WILLIAMS, JR., sitting as a panel of three.

*Edward Greer, Mesirov, Gelman, Jaffe, Cramer & Jamieson,* for Melrose Park Improvement Association, appellant.

*John F. Christie, III,* with him *Gilbert P. High, Jr., High, Swartz, Roberts & Seidel,* for The Board of Commissioners of Cheltenham Township, appellant.

*Lewis Kates, Kates & Livesey,* for appellees.

OPINION BY JUDGE CRAIG, May 7, 1980:

This appeal under the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10101 *et seq.,* has been brought by the Melrose Park Improvement Association and

the Board of Commissioners of Cheltenham Township (township) from an order of the Court of Common Pleas of Montgomery County which reversed a decision of the township denying the request of appellees, as applicant, for permission to rebuild the Continental Dinner Theatre, a legal nonconforming use which had been destroyed by fire. Although the application seeks only to restore a single building, and no subdivision by title or otherwise has been requested, this appeal involves the township's refusal to grant approval under the Cheltenham Township Subdivision Ordinance of 1974 (subdivision ordinance).

As to the facts and rationale, we adopt the able and concise opinion of Judge CIRILLO as to the decision below. It reads:

The plaintiffs are the owners of a property which was being operated as a valid nonconforming use. On January 1, 1974, the property was substantially destroyed by fire. The plaintiffs desired to reconstruct the building in order to reinstitute the former use. The plaintiffs did not seek a building permit because they were informed by the township that they must submit a plan of reconstruction under the Township Subdivision Ordinance. In December 1974, the plaintiffs submitted a plan for reconstruction, which plan was denied by the township. The plaintiffs submitted a second reconstruction plan which was also denied. The plaintiffs appealed both denials to the Court. After argument, the Court sustained the appeals, and directed that the proper building permits be issued. The defendant has appealed that Order to the Commonwealth Court.

The township contends that the plaintiffs abandoned their nonconforming use because they did not begin reconstruction within one

year of the fire, as required by the zoning ordinance. Abandonment requires intent to abandon, and the township did not demonstrate any intent on the part of the plaintiffs in this case. As was stated by the Commonwealth Court in Grace Building Co. v. Zoning Board of Adjustment, 392 Atl. 2d 892: 'The ordinance places a time limitation on the right of a landowner to resume a nonconforming use, the intention to surrender the right may be presumed from the expiration of the designated period, but it is still necessary to show concurrent overt acts or failures to act which indicate abandonment.' In this case, the plaintiffs filed a development plan within one year and, therefore, the presumption referred to in the Grace case is not applicable and the burden to prove abandonment or intent to abandon shifted to the municipality. The Court finds that the submission of the plan was a significant step toward reconstruction and, therefore, there was no abandonment. The township further argues that the plaintiffs should have requested a building permit and, when denied, could then have brought a mandamus action. However, to have pursued that route would have only encouraged litigation. Instead, the plaintiffs proceeded under the Subdivision Ordinance because they were advised to do so by the township.

It is clear that the Cheltenham Subdivision Ordinance is not applicable to plaintiffs' proposed reconstruction of its nonconforming use. Subdivision ordinances are to be strictly construed against a municipality: Gulf Oil Corp. v. Warminster Twp., 22 Pa. Comm. Ct. 63. The plaintiffs do not seek a subdivision and, therefore, the only possible section of the subdivi-

sion ordinance which could be pertinent would be under the Land Development Section thereof, which refers to the improvement of any lot for business or commercial use requiring off-street parking. However, the plaintiffs were not seeking an improvement as that is defined in the township's own ordinance, but are merely seeking reconstruction of that which was already there. Hence, the plaintiffs should have applied for a building permit under the Cheltenham Zoning Ordinance, which permit should have been granted. However, the plaintiffs proceeded as directed by the township authorities and they should not be penalized for so doing. The Court properly sustained the appeal and directed the issuance of the building permits.

In this court, the appeal explicitly involves two issues for our consideration, as follows:

1. May the township's subdivision and land development ordinance, adopted under the MPC, validly regulate the erection of a commercial building as ''improvement of any lot for business or commercial use requiring off-street parking'', when subdivision or land development as defined in the MPC is not involved?

2. Did the court below in sustaining the appeal, err in directing the township to issue the proper building permits?

1.

The stated issue concerning the validity of the scope of the subdivision ordinance certainly deserves our consideration, lest further problems ensue in Cheltenham Township or elsewhere.

As both parties acknowledge, the subdivision ordinance has been adopted under Article V of the MPC,

§§501-515, 53 P.S. §§10501-10515. MPC §501, 53 P.S. §10501, sets forth the "Grant of Power" as to such an ordinance by stating:

> The governing body of each municipality may regulate subdivisions and land development within the municipality by enacting a subdivision and land development ordinance. . . .

Section 107(21) of the MPC, 53 P.S. §10107(21), sets forth the familiar definition of "subdivision", as the division of a parcel of land by any means into two or more lots or other divisions of land, including changes in existing lot lines for the purpose of lease, transfer of ownership or building or lot development (exempting the division of land for agricultural purposes into parcels of more than ten acres).

In subsection (11) of the same Section 107, "land development" is defined as embracing "subdivision" and also

> the improvement of one lot or two or more contiguous lots, tracts or parcels of land for any purpose involving (a) a group of two or more buildings, or (b) the division or allocation of land or space between or among two or more existing or prospective occupants by means of, or for the purpose of streets, common areas, leaseholds, condominiums, building groups or other features.

53 P.S. §107(11).

We note the recurring reference to a *group* of buildings.

Cheltenham's ordinance contains the same definitions of "subdivision" and "land development", but, in the latter item, adds:

> 3. The improvement of any lot for business or commercial use requiring off street parking.

Because off-street parking is almost universally required to be associated with the improvement of any

lot for business or commercial use, the added definition operates to extend the scope of the subdivision ordinance to cover the erection of virtually all commercial buildings, and also the improvement of the premises where a commercial building is already in place, even where there is no title or leasehold division (subdivision) or any functional division by a group of two or more buildings or otherwise (land development).

Thus, in addition to regulating unitary commercial development by its zoning ordinance, the township here seeks to apply to the single commercial structure all of the traditional subdivision requirements, including the submission of a preliminary plan (unless waived) as well as a final plan, the necessity of recording the plan, and the providing of a bond to insure installation of improvements, as well as an environmental impact study required to be made by both a professional engineer and a real estate appraiser; that impact study must consider not only utilities, open space, noise, traffic and erosion but also must contain an analysis of impact upon property values and aesthetics as well as upon density of population.

The result is that these requirements, basically intended for subdivisions and large-scale development, are sought to be applied by this township's version of a subdivision ordinance to the erection of a single commercial building and, in this case, to the construction of a preexisting building.

Although the goals are doubtless commendable and such requirements may not amount to "regulation run mad" (see *White's Appeal*, 287 Pa. 259, 134 A. 409 (1926)), the extended scope of this ordinance finds no authorization in the enabling provisions of the MPC, set forth above. The township argues that MPC §503, dealing with "Contents of Subdivision and Land Development Ordinance", allows the expanded scope by

providing that the "subdivision and land development ordinance may include, but need not be limited to" various regulatory provisions. (53 P.S. §10503.) That contention cannot avail the township because, although Section 503 is thus open-ended as to the *requirements* authorized, Sections 501 and 503 clearly grant power only with respect to ordinances having a *scope* which embraces "subdivision" and "land development" as those terms are defined by the MPC.

We therefore confirm the lower court's decision that the subdivision ordinance cannot be applied to such a case as this.

### 2.

The township questions the lower court's ordering of the issuance of proper building permits, contending that applicants' appeal to court did not ask for building permits as such but only asked that the township's refusal be subject to review (and necessarily, reversal).

We only read the order of the lower court as recognizing that, in some cases, once the courts have reversed a municipal development denial, some municipalities have followed with obstructive attempts to frustrate definitive relief. *See Casey v. Zoning Hearing Board of Warwick Township*, 459 Pa. 219, 328 A. 2d 464 (1974) noted by us in *Raum v. Tredyffrin Township Board of Supervisors*, 29 Pa. Commonwealth Ct. 9, 370 A.2d 777 (1977) and *Ellick v. Board of Supervisors of Worcester Township*, 17 Pa. Commonwealth Ct. 404, 411, 333 A.2d 239, 244 (1975).

Consequently we interpret the order of the court below as simply providing, by way of relief, that the township shall grant all approvals necessary to permit the development requested. Reference to "building permit" is commonly employed as shorthand for all pertinent development approvals.

As we held in *Northampton Township v. G.R.S.H., Inc.*, 14 Pa. Commonwealth Ct. 364, 371, 322 A.2d 758, 762 (1974), the right to receive a permit does not eliminate the necessity "to be in compliance with any other codes, ordinances or statutes which might in fact be applicable." Just as Judge BLATT there added, we also state, "If there are any such requirements, we are confident, of course, that the Township will not act unreasonably in enforcing them."

The decision below is affirmed.

### ORDER

AND NOW, this 7th day of May, 1980, the order of the Court of Common Pleas of Montgomery County dated February 14, 1979 is affirmed.