Robert B. Surrick, Appellant, *v.* Zoning Hearing Board of the Township of Upper Providence, Appellee, and Citizens on Zoning, Intervening Appellees.

608

Argued October 4, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Harry F. Dunn, Jr.*, with him *Class, Saulnier, Dunn and Abel*, and, of counsel, *Jan Z. Krasnowiecki*, for appellant.

*John P. Trevaskis, Jr.*, with him *Trevaskis, Doyle, Currie, Nolan and Bunting*, for appellee.

*John W. Nilon, Jr.*, with him *Kassab, Cherry and Archbold*, for intervenors.

OPINION BY JUDGE BLATT, January 16, 1974:

Robert B. Surrick is the equitable owner of 12.25 acres of vacant ground in Upper Providence Township (Township), Delaware County, and the legal owner (with his wife) of an adjacent 10.5 acres. On March 10, 1972, Surrick sought a building permit to erect 187 apartment units[1] on the 12.25 acres and 4 of the adjacent acres, making the subject tract

---

[1] This request was subsequently amended to 176 units, made up of 138 apartments and 38 townhouses.

16.25 acres in total, which was described by the Township's Zoning Hearing Board (Board) as follows:

"The subject tract is a level, fairly open piece of ground bounded on the East by Providence Road, on the South by Rose Tree Road, on the West by Sycamore Mills Road and on the North by the remaining 6.5 acres owned by the Appellant and his wife.

"The Media By-Pass is a depressed highway running generally parallel to Rose Tree Road and about 500 feet South of it, with entrance and exit ramps onto Providence Road.

"In the area surrounding the subject tract are single family residences on 1 acre lots or greater, except for a Sunoco Station at 100 feet South on the Southeast Corner of Rose Tree Road and Providence Road, a new Junior High School North of the 6.5 acre parcel owned by Appellant and his wife, the County Park grounds at the Northeast corner of the intersection and several churches in the area.

"The County Park ground is open and undeveloped and the Sunoco Station is the only business use North of the Media By-Pass, although the ground along Providence Road on both sides between the By-Pass and Rose Tree Road is zoned B-Business to a depth of 175 feet."

The building permit was denied because the land in question was zoned A-1 Residential, which permitted only single family dwellings on one acre lots. Surrick then appealed to the Board, requesting a variance and, in the alternative, challenging the constitutionality of the zoning ordinance. The Board denied the variance, and the Court of Common Pleas of Delaware County on appeal, without taking any additional evidence, affirmed the action of the Board and also found that the zoning ordinance was not unconstitutional. On appeal to this Court, Surrick has raised three essential issues: (1) he was denied due process

by the action of the court below in accepting the findings of fact of the Board; (2) he is entitled to a variance; and (3) in any case, the zoning ordinance is unconstitutional as applied to his property.

Where, as here, the lower court has taken no additional testimony on an appeal from a zoning board but has relied entirely on the record compiled before the Board, our scope of review is limited to whether or not the Board committed an abuse of discretion or an error of law. *Clawson v. Harborcreek Zoning Hearing Board,* 9 Pa. Commonwealth Ct. 124, 304 A. 2d 184 (1973). The court below held that its scope of review on an appeal from the Board in which it accepts no new evidence is identical to ours. Surrick attacks that position.

Surrick contends that the standard of review followed by the lower court was arguably unconstitutional and, at the very least, unfair. He argues that the doctrine enunciated in the case of *Ohio Valley Water Company v. Ben Avon Borough,* 253 U.S. 287, 64 L. Ed. 908 (1920), requires that on appeals from administrative bodies, such as zoning hearing boards, which involve constitutional questions, a reviewing court is required to exercise independent judgment both as to the facts and as to the law, and not merely to apply the substantial evidence doctrine, and he cites in *Ben Avon, supra*: "[I]f the owner claims confiscation of his property will result, the state must provide a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts; otherwise the order is void because in conflict with the due process clause, 14th Amendment." 253 U.S. at 289, 64 L. Ed. at 914. While this issue was not raised in the court below, and, therefore, we need not consider it here,[2]

___

[2] *Wynnewood Civic Association v. Lower Merion Township Board of Adjustment,* 406 Pa. 413, 179 A. 2d 649 (1962).

we shall deal with it briefly in case it may be raised hereafter.

It is doubtful whether *Ben Avon, supra,* is applicable here since the constitutional issue here raised involves exclusionary zoning and not confiscation of property. *Cf. Acker v. United States,* 298 U.S. 426, 80 L. Ed. 1257 (1936). In any case, however, without overruling *Ben Avon,* the United States Supreme Court has tended to ignore the *Ben Avon* doctrine in later cases and has usually applied the substantial evidence rule to findings of fact made by administrative agencies. *See Permian Basin Area Rate Cases,* 390 U.S. 747, 20 L. Ed. 2d 312 (1968); *Federal Power Commission v. Natural Gas Pipeline Company of America,* 315 U.S. 575, 86 L. Ed. 1037 (1942); *Railroad Commission of Texas v. Rowan & Nichols Oil Company,* 310 U.S. 573, 84 L. Ed. 1368 (1940).

Surrick does call to our attention the dictum contained in a footnote in *Pickering v. Board of Education of Township High School District 205,* 391 U.S. 563, 20 L. Ed. 2d 811 (1968), which stated that where constitutional rights are in issue in an appeal from an administrative agency, an independent examination of the record must be made in order that controlling legal principles may be applied to the actual facts of the case. It is unclear, however, whether the Court intended this rule to have a general application or was there influenced by the fact that the trier of fact was the same body which was the victim of the actions alleged as well as the prosecutor. In any case, since the matter is unclear, we must be bound by the decision of our Pennsylvania Supreme Court in *Concord Township Appeal,* 439 Pa. 466, 268 A. 2d 765 (1970), which involved a constitutional issue and which held: "Initially we must note that the trial court erred in making new findings of fact without taking additional testimony. Without an independent

taking of evidence the trial court could not properly make its own findings of fact, but could only review the decision of the board to determine if an abuse of discretion or an error of law had been committed." 439 Pa. at 469, 268 A. 2d at 766.

Based on *Concord, supra,* we must hold that the court below applied its proper scope of review on the appeal from the Board.

### VARIANCE

When seeking a variance, an applicant must prove "(a) that the effect of the zoning ordinance is to burden his property with an unnecessary hardship which is unique to his particular property; and (b) that the variance would not have an adverse effect upon the public health, safety or welfare." *Sposato v. Radnor Township Board of Adjustment,* 440 Pa. 107, 109-110, 270 A. 2d 616, 617 (1970). "A variance should be granted only in exceptional circumstances and the burden of proving its need is a heavy one." *The Boulevard Land Corporation v. Zoning Board of Adjustment,* 8 Pa. Commonwealth Ct. 584, 586, 303 A. 2d 234, 235 (1973). An unnecessary hardship can be established: "(1) by a showing that the physical characteristics of the property were such that it could not in any case be used for the permitted purpose or that the physical characteristics were such that it could only be arranged for such purpose at prohibitive expense . . . or (2) by proving that the characteristics of the area were such that the lot has either no value or only a distress value for any purpose permitted by the zoning ordinance. . . ." *Philadelphia v. Earl Scheib Realty Corp.,* 8 Pa. Commonwealth Ct. 11, 17, 301 A. 2d 423, 426 (1973). "Mere economic hardship will not support the grant of a variance . . . except where the zoning regulations complained of render the complainant's property practically valueless." *Colonial Park for Mobile Homes,*

*Inc. v. Zoning Hearing Board,* 5 Pa. Commonwealth Ct. 594, 599, 290 A. 2d 719, 722 (1972).

In applying the above principles to the current situation, we must hold that Surrick failed to carry the heavy burden necessary to warrant the grant of a variance.

Surrick's own witnesses conceded that there was nothing topographically unique about the subject property and that there was no physical reason why single family dwellings could not be built thereon. Surrick's argument appears to be, however, that, because of the proximity of a heavily traveled highway and because of the attractiveness of the property for multi-family dwelling use or commercial uses, single family dwellings on one acre lots could not profitably be built thereon. He specifically argues that, based on the price he agreed to pay for the 12.25 acres, $225,000.00, houses built on one acre lots would necessarily be too expensive to be sellable in that particular location. The Board found, however, that a reasonable sale price for each one acre lot would be $15,000.00 and that single family homes could be built and would be sellable at a price of between $60,000.00 to $75,000.00. Although these figures were disputed by some witnesses, there was substantial evidence to support them in the testimony of Donald Wright, a local real estate broker.

Even many of Surrick's own witnesses conceded that single family dwellings could be profitably built and sold on this property, although not if the total land cost was as high as Surrick had agreed to pay. These witnesses testified that the value of the property as zoned was actually only between $2500.00 and $7,000.00 per acre. Therefore, if the estimates of value given by Surrick's witnesses were correct, and that given by Wright and accepted by the Board was not, then it is clear that Surrick agreed to pay an inflated

price for the land. "It would surely be unfair for an owner to prove he was entitled to a variance merely by paying an inflated purchase price for the property if the purchase price were inflated solely in the expectation of a variance." *Gro Appeal,* 440 Pa. 552, 559-560, 269 A. 2d 876, 880 (1970). Thus if the $225,-000.00 is disregarded as to the raw land cost, even most of Surrick's witnesses agree that single family dwellings in the $30,000.00 to $35,000.00 price range could be profitably built and sold.

Of course, in any case, economic feasibility is not really important where it is clear that single family dwellings can in fact be built on the land. "The test is not whether the desired use of the property by its owner is the more desirable or even the best use. Rather, in a variance case, the question is whether the property may be used in a reasonable manner within the restrictive provisions of the zoning ordinance or regulation." *Marple Gardens, Inc. v. Zoning Board of Adjustment and Johnson,* 8 Pa. Commonwealth Ct. 436, 443, 303 A. 2d 239, 242-243 (1973). Surrick simply failed to carry the burden of proving that single family homes could not be built on one acre lots on his property and he is consequently not entitled to a variance.

## CONSTITUTIONALITY

It is Surrick's contention that the zoning of the property in question bears no reasonable relation to the public good, is solely intended to exclude apartments and lower income individuals from choice residential areas and is thus invalid.

In considering the validity of the ordinance, we must presume it to be valid and constitutional and the burden of proving otherwise is upon Surrick. *See Schubach v. Silver,* 9 Pa. Commonwealth Ct. 152, 305 A. 2d 896 (1973). Inasmuch as the Township's zon-

ing ordinance does permit apartments in B-Business districts, it is not exclusionary on its face and invalid for that reason, as was the situation in *Girsh Appeal*, 437 Pa. 237, 263 A. 2d 395 (1970). As to the possibility that it might constitute de facto exclusionary zoning, we note that the Board found as a fact, on the basis of substantial evidence, that during the period 1960 to 1972, 697 homes and 385 apartment units were constructed in the Township. It is claimed that the area provided for apartments is too small, but even if true that alone hardly overcomes the presumption of constitutionality. *Honey Brook Township v. Alenovitz*, 430 Pa. 614, 243 A. 2d 330 (1968). Likewise, the fact that apartments are limited to a basically commercial district is of no consequence where, as here, it is not proved that this results in grouping such use with totally incompatible uses, thus rendering the district concerned unusuable for the proposed use. *Hodge v. Zoning Hearing Board of West Bradford Township*, 11 Pa. Commonwealth Ct. 311, 312 A. 2d 813 (1973).

It is true that the one acre minimum lot size and limitation to single family dwellings in the A-1 Residential district excludes apartments from those districts. But it is the very heart of land use planning that certain uses be limited to certain areas for the purpose of insuring a rational and orderly development of the community. To permit otherwise would be merely to encourage the all too familiar aesthetic and environmental blight which often strikes at rapidly developing unplanned areas.

Therefore, although zoning provisions may not be used to avoid the increased responsibilities and economic burdens which time and natural growth invariably bring, it is still a legitimate exercise of the police power to zone for density and it is impossible for a court to say that any minimum acreage requirement is unconstitutional per se. *National Land and Invest-*

*ment Company v. Easttown Township Board of Adjustment,* 419 Pa. 504, 215 A. 2d 597 (1965).

In considering the validity of a minimum acreage requirement, it is necessary to be concerned with the reasonableness and the purpose of the requirement concerned. A zoning ordinance is not valid if its "primary purpose is to prevent the entrance of newcomers in order to avoid future burdens, economic and otherwise, upon the administration of public services and facilities. . . ." *National Land, supra,* 419 Pa. at 532, 215 A. 2d at 612. *See Concord Township Appeal,* 439 Pa. 466, 268 A. 2d 765 (1970). There was certainly not sufficient evidence here to show that the one acre minimum in the A-1 Residential district was enacted for any such invalid purpose. Likewise, we cannot hold that the one acre minimum is clearly unreasonable, for again there is no substantial evidence that it is.

For these reasons, therefore, we thus cannot hold this ordinance to be invalid, at least as it applies to Surrick's property, and we must affirm the order of the court below.