## Holy Trinity Housing, Inc. v. The Borough Council of Ligonier

*Joel Aaronson,* for appellant.
*Robert Lightcap,* for appellee.

ACKERMAN, *J.,* November 21, 1981—On April 19, 1978, Holy Trinity filed an application with the borough council to construct 38 one-bedroom units of housing for the elderly upon a lot measuring approximately 180 x 180 feet at the corner of West Church Street and North Hemlock Alley. The bor-

ough council denied the application asserting that it violated the borough's land use ordinance in regard to minimum lot area, maximum building coverage, rear yard depth and minimum off-street parking areas. Holy Trinity then applied for a variance which was denied following a hearing on May 31st, 1978, and an appeal was taken to the Westmoreland County Court of Common Pleas at No. 7067 of 1978. On August 20, 1979, Holy Trinity submitted to council a challenge to the validity of the land use ordinance and a request for a curative amendment together with supporting plans and materials pursuant to and in conformance with the requirements of Section 1004 (1)(b), 1004 (2) and 609.1 of the Pennsylvania Municipalities Planning Code, 53 P.S., §11004 (1) (b), 11004 (2) and 10609.1. The curative amendment, if adopted, would have resulted in an amended zoning ordinance with special provisions for housing for the elderly and would have permitted Holy Trinity to proceed with construction. Following a hearing on the matter, borough council denied the request for the curative amendment on November 8, 1979. An appeal from that denial was taken to the Westmoreland County Court of Common Pleas at No. 12727 of 1979 and was consolidated with the variance appeal mentioned above. Prior to the hearing before the court of common pleas, Holy Trinity voluntarily withdrew the variance appeal at No. 7067 of 1978 and the matter proceeded on the appeal from the denial of the curative amendment alone. The undersigned sat as hearing judge on July 8, 1980, and after the submission of proposed findings of fact and conclusions of law, entered an order on October 8, 1980 declaring the borough's land use ordinance exclusionary and unconstitutional, and directed borough council and its code enforcement officer to issue a

building permit to Holy Trinity to allow construction of the housing for the elderly project as requested. Borough council filed exceptions to the order and Holy Trinity filed a motion to strike those exceptions alleging that the borough council had erred in not taking a direct appeal to the Commonwealth Court. This motion was eventually argued before and decided by the Westmoreland County Court en banc which therefore, now pass upon the merits of the exceptions filed, by the borough council. While 44 exceptions were filed, borough council has distilled its position to three basic arguments.

The first issue is whether or not a municipality must create a separate residential zoning classification to accommodate housing for the elderly. As far as we know, this is a case of first impression. The borough council calls to our attention the case of Crarey Home, et al. v. Joseph DeFrees, et al., 16 Pa. Commw. 181, 329 A.2d 874 (1974) which has been cited for the proposition that housing for the elderly can be construed to fit within areas zoned for apartments or multi-family use. While the construction of housing for the elderly in such areas may be permissible, it does not dispose the issue at hand, which is whether or not housing for the elderly is a unique and distinctive housing category deserving a classification of its own within a municipality's ordinance. We must also not lose sight of the fact that the curative amendment sought by Holy Trinity was aimed at providing housing for the elderly who are required to subsist on low and moderate income. We do not agree with borough council's suggestion that their ordinance is valid unless there is proof of discriminatory intent. The case cited by them, Metropolitan Housing Development Corp. v. Village of Arlington Heights, 429 US 252 (1977), while dealing with zoning matters, concerns itself with a

challenge under the equal protection clause of the Fourteenth Amendment. Rather, we are obliged to follow the exclusionary zoning decisions of the Township of Williston v. Chesterdale Farm, Inc., 7 Pa. Commw. 453, 300 A.2d 107, aff'd. 341 A.2d 466 (1975), and Surrick v. Zoning Hearing Board of Upper Providence, 11 Pa. Commw. 607, 382 A.2d 105 (1977), where the Pennsylvania Supreme Court adopted the "fair share" principle articulated in the New Jersey Supreme Court decision of Southern Burlington County NAACP v. Township of Mt. Laurel, 119 N.J. Super. 164, 336 A.2d 713 (1975), "which requires local political units to plan for and provide land use regulations which meet the legitimate needs of all categories of people who may desire to live within its boundaries." Surrick v. Zoning Hearing Board of Upper Providence, supra, at 108.

It is apparent that municipalities such as Ligonier may not adopt a zoning ordinance and cling to it in its original form without regard to the changing times or the needs of its own population.

"In pursuing the valid zoning purpose of a balanced community, a municipality must not ignore housing needs, that is, its fair proportion of the obligation to meet the housing needs of its own population and of the region." Township of Williston v. Chesterdale Farms, Inc., supra, at 115.

Likewise, our Supreme Court in agreeing with South Burlington County NAACP v. Township of Mt. Laurel, supra, has stated:

"We conclude that every such municipality must, by its land use regulations, presumptively make realistically possible an appropriate variety in choice of housing. More specifically, presumptively it cannot foreclosure the opportunity of the classes of people mentioned for low and moderate income housing and its regulations must affirmatively afford that

opportunity, at least to the extent that the municipality's fair share of the present and prospective regional need therefor. These obligations must be met unless the particular municipality can sustain the heavy burden of demonstrating peculiar circumstances which dictate that it should not be requried so to do." Surrick v. Zoning Hearing Board, supra, at 109.

Thus, a zoning ordinance which does not realistically permit a legitimate and needed housing type or which forecloses the opportunity of an indentifiable economic or social group from obtaining adequate housing is presumptively exclusionary. Csink v. Whitpain Township Pa. Commw., 414 A.2d 402 (1980); Martin v. Township of Mill Creek, Pa. Commw. 413 A.2d 764 (1980); Surrick v. Zoning Hearing Board, supra; Appeal of Olson, Pa. Commw., 338 A.2d 748 (1975). Similarly, a zoning ordinance which, by its economic effect, seriously impedes or absolutely prevents the construction of low cost housing is also exclusionary.

"By any definition, however, the term 'exclusionary zoning' has come to signify the general problem created by local zoning ordinances that render suburban housing costs so prohibitively high that low or moderate income families cannot afford to buy." Township of Williston v. Chesterdale Farms, Inc., supra, at 115.

The rationale of these decisions is applicable to this case if we conclude that housing for the elderly should be treated as a separate and distinct category and that the effect of the present ordinance is exclusionary.

Convincing testimony was presented at the hearing which was proof of something which most observers were already aware; that is, that our society is experiencing a demographic shift. As a conse-

quence of prolonged life expectancy and declining birth rates, the elderly are increasing in our society both in absolute numbers and in relative proportion to the total population; they also unfortunately are the least affluent age group in our country. The population living in and around Ligonier is no exception to this national trend. Interestingly enough, the percentage of elderly persons living in Ligonier exceeds that of any subdivision in Westmoreland County. Not only are the elderly a distinct and recognizable group, but they are a group beset by unique problems not shared by the general population. The aging process brings on a wide variety of physiological and socio-psychological changes which cause unique problems often exacerbated by an attempt on the part of the elderly to maintain conventional housing. Holy Trinity has attached to its brief an excerpt from the New Jersey 125 N.J. Super. 376 Supreme Court decision of Taxpayers' Association v. Weymouth Township, — Pa. Commw. — 364 A.2d 1016 (1976), which contains an enlightening discussion of these varied problems.

Having concluded that the elderly and particularly the elderly with low and moderate incomes are a distinct and identifiable group deserving of special consideration, we must now decide whether or not the ordinance passed by borough council is, in fact, exclusionary. Admittedly the ordinance does not specifically say that housing for the elderly is prohibited; a fact, which in light of the cases cited above, is of no significance. Borough council, however, suggests that housing for the elderly is incorporated into their definition of multi-family dwellings as described in the ordinance and is subject to the same zoning restrictions. We cannot be persuaded to adopt such a simplistic view of the sit-

uation. As the testimony clearly revealed, multi-family units and apartments are not the same as housing for the elderly. This becomes apparent when we look at the characteristics of the buildings involved. Housing for the elderly requires a physical plant designed to accommodate the special needs of the aged such as elevators in buildings of only two or three stories, community rooms, public kitchens, public restrooms, clubrooms, accommodations for on-site resident managers, hallway handrails, individual alarm systems, kitchens and bathrooms designed to accommodate wheelchair occupants and residents' quarters designed to eliminate the need for stooping or stretching. In addition to these special facilities, it is apparent that we are dealing with a different type of housing when we recognize the difference in the density of occupation. Holy Trinity, correctly we believe, points out that we are not dealing with "family" units. The average occupancy in a housing for the elderly project is 1.06 persons per unit, meaning that these units are predominantly occupied by a single individual. By comparison a single family house will usually provide a residence for four to five individuals; a typical two bedroom garden apartment by 2.3 persons and a typical one-bedroom conventional highrise apartment by 1.8 persons. This single person occupancy and a significantly reduced level of car ownership by the elderly along with their reduced mobility and outdoor activity substantially reduces the impact of housing for the elderly on the surrounding uses as compared to the multi-family use.

We believe the logic of the location selected by Holy Trinity is beyond question. It is in a mid-town area on level terrain within easy walking distance to a full range of social, commercial, religious, recreational and medical services.

Borough council devotes a great deal of its brief to pointing out the fact that the curative amendment sought by Holy Trinity is designed specifically to enable Holy Trinity to meet the requirements of a federally financed project. We see no wrong in this since realistically we must acknowledge that projects of this kind are dependent upon federally subsidized programs and that their construction and maintenance by the private sector could not be both profitable and within the reach of the low and moderate income elderly. Cost considerations are, in fact, valid considerations, Township of Williston v. Chesterdale, Inc., supra.

In the second issue raised by borough council they contend that their ordinance does not unreasonably exclude the elderly as a group from the borough. We agree that neither council or its ordinance excludes the elderly, but they have, in fact, excluded a unique type of housing specifically designed for the elderly. As mentioned earlier, it is insignificant that the ordinance does not contain a specific prohibition.

"We believe, however, that the Township's distinction between a specific prohibition and a failure to provide is immaterial. In Berger, supra, we held that "the ordinance which fails entirely to provide for a needed and desired kind of residential use is exclusionary and as a consequence is unconstitutional,' (Citations omitted) The township further contends that townhouses are permitted in two of its districts (A-1 Garden Apartments and A-2 Apartments) and as a matter of fact, that townhouse already exist in the A-1 District. Even if true, however, those circumstances would not cure the defect in the ordinance, i.e., the failure to provide for townhouse development as a matter of right." Low-

er Gwynedd Township v. Provincial Investment Co., 39 Pa. Commw. 546, 395 A.2d 1055, 1057 (1978).

We feel that the ordinance passed by borough council is exclusionary in that it fails to provide for housing for the elderly as a matter of right.

Having concluded that housing for the elderly is a distinct and unique residential use; and further, that the borough's ordinance is exclusionary, there is only one other matter to which we must address our attention; that is that the order of October 8, 1980, is overly broad and invalidates the entire ordinance and all of its provisions rather than limiting itself to the issues described earlier in this opinion. We believe that borough council's conern as to the effect this order might have on other zoning cases having nothing to do with housing for the elderly is a legitimate one and accordingly we agree that the order should be modified pursuant to the guidance set forth in Ellick v. Board of Supervisors of Worcester Township, 17 Pa. Commw. 404, 333 A.2d 239 (1975).

## ORDER OF COURT

And now, this November 20, 1981, the exceptions filed by the Borough Council of the Borough of Ligonier are hereby dismissed.

The order of this court dated October 8th, 1980, is hereby modified as follows:

The plans of Holy Trinity, Inc. as submitted to the Borough of Council of the Borough of Ligonier and to this court are hereby approved subject to all of the other zoning regulations and provisions of the ordinance applicable to the housing for the elderly project insofar as they are reasonably adaptable to housing for the elderly projects.

The following sections of the ordinance, however, are not applicable to the present case:

Section 403(A)(1) concerning minimum lot area;

Section 402(A)(1) concerning maximum building coverage;

Section 403(A)(6) concerning rear yard minimum depth;

Section 501(C)(1) concerning off-street parking.

Further, the Borough Council of the Borough of Ligonier and its code enforcement officer are hereby ordered and directed to issue a building permit to Holy Trinity Housing, Inc. for the purpose of erecting its proposed housing for the elderly development.