605 A.2d 1294

**ALLSTATE INSURANCE COMPANY and Allstate Indemnity Company, Petitioners,**

v.

**Constance B. FOSTER, Insurance Commissioner of the Commonwealth of Pennsylvania and Insurance Department, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 1991.

Decided March 13, 1992.

S. Walter Foulkrod, III, for petitioners.

Zella M. Smith, Dept. Counsel, for respondent.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and PELLEGRINI, JJ.

DOYLE, Judge.

This is an appeal by Allstate Insurance Company and Allstate Indemnity (collectively Allstate) from an order of the Insurance Commissioner (Commissioner) which declared that the Insurance Department's (Department) 10.4% rate of return on Generally Accepted Accounting Principles (GAAP) equity was approved as the appropriate rate of return to be used in evaluating Allstate's request for extraordinary circumstances relief.

While the Commissioner granted Allstate some of the relief it sought, she would not hold that Allstate was entitled under the extraordinary circumstances provision [1] to a rate of return on GAAP equity in excess of 10.4%. Thus the stipulated issue is whether the Commissioner's 10.4% rate of return which here functions to deny Allstate additional relief is unjust, unreasonable and confiscatory.

Most of the issues in this case, including the method by which the Commissioner arrived at the 10.4%, are resolved in this Court's opinion in *Prudential Property and Casualty Insurance Company v. Department of Insurance*, 141 Pa.Commonwealth Ct. 156, 595 A.2d 649 (1991). Allstate, however, raises an initial issue as to this Court's scope of review. While *Prudential* did contain a statement

1. This provision allows the Commissioner to grant insurers relief from mandatory rate rollbacks effected by the Act of February 7, 1990, P.L. 11 (Act 6).

as to our scope of review,[2] the case did not address the viability of what is known as the *"Ben Avon"* doctrine. Accordingly, we shall now do so.

Allstate contends that our scope of review requires us to determine upon our own independent judgment both the facts and the law. It relies upon *Ohio Valley Water Co. v. Ben Avon Borough,* 253 U.S. 287, 40 S.Ct. 527, 64 L.Ed. 908 (1920), a case involving a challenge to certain water rates fixed by Pennsylvania's Public Service Commission. In that case the Pennsylvania Superior Court had substituted its judgment of the facts for that of the Commission and on that basis had reversed. On further appeal the Pennsylvania Supreme Court had reversed indicating that the Superior Court had erred in usurping the agency's judgment. The United States Supreme Court in considering the issue noted that rate fixing is legislative in character and opined, "[i]n all such cases, if the owner claims a confiscation of his property will result, the state must provide a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts; otherwise the order is void because in conflict with the due process clause, Fourteenth Amendment." *Id.* at 289, 40 S.Ct. at 528.

The continued viability of the *Ben Avon* doctrine, however, is in serious doubt. Professor Davis in his scholarly tome, *Administrative Law Treatise* (1958), has indicated that the *Ben Avon* doctrine was a "clear departure from previous law." *Id.* at 164. The case was later modified to indicate that independent judgment exists where the judiciary is informed and aided by the sifting procedures of an administrative agency vested with expertise in the area. *Id.* at 165. As Professor Davis notes, the weakness of the *Ben Avon* doctrine lies in its assumption that the facts upon

**2.** We said in *Prudential,* "[t]his Court may not reverse or modify an agency adjudication unless the adjudication violates constitutional rights, is not in accordance with agency procedure or with applicable law, or unless any finding of fact necessary to support the adjudication is not based upon substantial evidence. 2 Pa.C.S. § 704." *Id.,* 141 Pa.Commonwealth Ct. at 163–164, 595 A.2d at 653.

which constitutional rights depend can be found only by a court. *Id.* at 166. Further, the doctrine renders the agency's power to regulate a nullity. *Id.* (quoting from Dickinson, *Administrative Justice and the Supremacy of Law*, 201–202 (1927)).

Professor Davis further notes that in 1942 the High Court began to ignore the *Ben Avon* doctrine when it observed in *Federal Power Commission v. Natural Gas Pipeline Co.*, 315 U.S. 575, 62 S.Ct. 736, 86 L.Ed. 1037 (1942), that a court is required to accept an agency's findings if they are supported by substantial evidence.[3] *Administrative Law Treatise* at 169. Later still the substantive rate making theory which formed the basis for *Ben Avon* was discredited. *Id.* at 169–170. And, the High Court has not interfered when lower courts have not followed *Ben Avon*. *Id.* at 170 (citing as an example *State Corporation Commission of Kansas v. Federal Power Commission*, 206 F.2d 690, 698 (8th Cir.1953), *cert. denied*, 346 U.S. 922, 74 S.Ct. 307, 98 L.Ed. 416 (1954)): "[A]s between two fairly conflicting views the court may not displace the Commission's choice, even though the court would justifiably have made a different choice had the matter been before it de novo." *Administrative Law Treatise* at 170–71, n. 27. As Professor Davis observes:

> [T]he extent to which judges review findings of fact cannot be measured by verbalisms that crop out in the opinions. Even when an opinion says that independent judicial judgment is called for, the judges usually give weight or great weight to findings made by administrative officers who have lived with the case over a long period and whose understanding of the details far surpass that of the reviewing judges. In this sense, probably nearly every reviewing court in every state provides something less than independent judicial judgment whenever the court is unimpressed with the arguments made

**3.** *Natural Gas* employed the substantial evidence test set forth in the Natural Gas Act, 15 U.S.C. § 717(r). Confiscation, however, was an issue and had the Court believed *Ben Avon* was the proper standard it would have applied it.

by the challenging parties or whenever the court for reasons of its own has a sufficient confidence in the integrity and conscientiousness of the particular administrators. In absence of special reasons to the contrary, the presumption is normally in favor of the administrative findings. The challenger almost always has a heavy burden. And when independent judicial judgment is qualified by a presumption that the administrative findings are supported, so that the challenger has a heavy burden, the judicial judgment is no longer independent. Furthermore, even the best of state courts are often confused about scope of review. The proportion of the opinions that are ambiguous or ambivalent is large. A typical example is an opinion which says that the Supreme Court has "receded" from the Ben Avon case, that the company is "entitled to a judicial determination of the issue of confiscation," that the court will presume "until the contrary is shown by clear and convincing proof, that the rates fixed by the Commission are reasonable and just," that the court "must not sit as a board of revision with appellate legislative authority to substitute its own judgment for that of the Commission," and that "courts may not resolve conflicting evidence or pass upon the credibility of witnesses."

The significant fact about the Ben Avon doctrine is not that a handful of state courts follow the doctrine because the Supreme Court has failed to overrule it explicitly. The significant fact is that despite the lack of explicit overruling, the Supreme Court since 1936 has frequently refused to reassert the doctrine, even though numerous cases are finally disposed of by the lower federal courts in violation of the doctrine and even though at least eighteen state courts have specifically acknowledged some degree of violation of the doctrine. (Footnote omitted.)

*Id.* at 179–180. *Accord Surrick v. Zoning Hearing Board of the Township of Upper Providence,* 11 Pa.Commonwealth Ct. 607, 314 A.2d 565 (1974), *reversed on other*

*grounds,* 476 Pa. 182, 382 A.2d 105 (1977). Because we believe that the doctrine is in fact discredited, although not expressly overruled, we shall follow the substantial evidence scope of review which is dictated by Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704, and which was employed in *Prudential.*

■ The other arguments which Allstate raises were disposed of in *Prudential.* We held there that the Commissioner's approach to the alleged confiscatory appropriation of property withstood constitutional scrutiny and we also specifically held as a matter of law that the Commissioner committed no error in adopting as the limit for situations where extraordinary circumstances relief will be granted a rate of return below 12% on statutory surplus.[4] This figure, which is derived from *Insurance Services Office Studies* [5] reflects the property and casualty insurance industries'

4. The reason for employing the 10.4% on GAAP equity in this case rather than the 12% statutory surplus is explained in the Department's brief as follows:

> In all states in which they write business, insurance companies are required to file annual financial statements prepared in accordance with statutory accounting principles ("SAP"). The statutory accounting system differs from generally accepted accounting principles ("GAAP") in that it values a number of balance sheet items more conservatively. The result of these differences is that equity, the measure of a company's net worth under GAAP, is approximately 20 percent greater than statutory surplus, the measure of net worth under SAP. Thus, a return on (i.e., as a proportion of) equity may be converted to a return on surplus by multiplying by a factor of 1.2.

> As part of its [Extraordinary circumstances] review for Allstate, and pursuant to the Department's Statement of Policy on Rate and Rule Filings, the Department determined that Allstate had a unique relationship between surplus and equity which constituted a special circumstance warranting use of a 10.4 percent rate of return on GAAP equity as a target rate of return for the period from February 1, 1990 to June 30, 1991, rather than a 12 percent rate of return on statutory surplus. R.13a. Therefore, for purposes of consistency herein, the rate of return referred to is in terms of GAAP equity, unless indicated otherwise.

Department's brief p. 3, n. 2.

5. The Insurance Services Office is an insurance industry data source. Its studies were used in helping the Commissioner arrive at the 10.4% figure. *Prudential.* In *Prudential,* however, those studies were not in

experience rather than the experience of other industries. We are not persuaded by Allstate's arguments that *Prudential* was wrongly decided. Accordingly, we shall adhere to it and affirm in this case.

## ORDER

NOW, March 13, 1992, the order of the Insurance Commissioner in the above-captioned matter is hereby affirmed.

evidence necessitating a remand. No similar evidentiary flaw exists here. *See* Department's Exhibit #3.