# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Waldo Alfaro and Rosie Alfaro,     :
          Appellants     :
          :
     v.     :    No. 502 C.D. 2023
          :    ARGUED:  June 3, 2025
Upper Makefield Township Zoning     :
Hearing Board     :


BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE MATTHEW S. WOLF, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**             **FILED:  June 30, 2025**

Appellants, Waldo Alfaro and Rosie Alfaro, appeal from an order of the Court of Common Pleas of Bucks County, denying their appeal from the decision of the Upper Makefield Township Zoning Hearing Board.  The Board's decision denied Appellants' appeal from the Township's Enforcement Notice and denied their request for multiple variances.  We affirm.

## I. Factual and Procedural Background

The facts of this case are largely undisputed.  Appellants own property located at 675 Eagle Road (Property) in the Township.  4/1/2022 Board Decision, Finding of Fact (F.F.) Nos. 2-3; Reproduced Record (R.R.) at 478.[1]  The Property totals 8.79 acres and is located in the Township's Conservation Management (CM) Zoning District.  F.F. No. 6.  Pursuant to Section 401.A.1 of the Joint Municipal

---

[1] We note that the Reproduced Record is not numbered pursuant to Pennsylvania Rule of Appellate Procedure 2173, Pa.R.A.P. 2173, with an "a" after the page numbers.

Zoning Ordinance (Ordinance),[2] the following are permitted uses in the CM Zoning District: "Agriculture and Horticulture, use A-1," "Intensive Agriculture, use A-2," and "Roadside Stands for Agricultural Products Grown on Site, use H-15.A." Ordinance § 401.A.1. Both Agriculture and Horticulture and Intensive Agriculture are principal uses, while Roadside Stands are accessory uses. "Agricultural Entertainment Uses, use H-15.C," are allowed as conditional uses in the CM Zoning District. Ordinance § 401.A.2.

Appellants have resided on the Property since 2006. F.F. No. 3. Appellants admittedly began operating a business on the Property known as Earth's Best Organics Farm (Earth's Best) in March 2020. F.F. No. 28(a). Initially, Earth's Best involved the keeping of chickens and production of chicken eggs. F.F. No. 28(b). However, it quickly expanded to include: the sale of various types of poultry, both live and slaughtered; the keeping of a cow, donkeys, sheep, and pigs, and the sale of these animals, both live and slaughtered; and the sale of rabbits, dogs, guinea pigs, peacocks, pigeons, and doves. F.F. No. 28(b)-(e). Appellants also installed a farm stand where they sell various items. F.F. No. 28(g). The expansion of Earth's Best culminated in Appellants inviting the public onto the Property and charging admission fees, as well as additional fees to interact with and feed the animals. F.F. No. 28(k)-(m), (o)-(p). Appellants also began hosting events for additional fees including birthday parties, picnic table rentals, and riding small battery-operated vehicles, and they installed recreational equipment including a swing set, sliding board, climbing wall, and trampoline. F.F. No. 28(n), (q)-(r).

In June 2021, the Township issued Appellants a Zoning Enforcement Notice (Notice) listing the following eight violations of the Ordinance:

---

[2] Joint Municipal Zoning Ordinance for Newtown Township, Upper Makefield Township, and Wrightstown Township, 2006 (Ordinance).

2

a. Ordinance § 1403.A.1, pertaining to use permits, which provides as follows:

> "1. Requirements of Use Permits. It shall be unlawful for any person to make any use of any building, farming unit, or other structure or land until a use permit has been duly issued therefore. Use permits shall be required prior to any of the following:
>
> a. Use of any building or other structure hereinafter erected, altered, or enlarged for which a building permit or frontage improvement permit is required;
>
> b. Change in use of any building or structure;
>
> c. Use of land or change in the use thereof, except that the placing of vacant land under cultivation shall not require a use or occupancy permit;
>
> d. Change in use or expansion of a nonconforming use."

b. Ordinance § 803.H-15.1.a, pertaining to the agricultural accessory use of "Roadside Stands for Sale of Agricultural Products Grown on Site," which provides, in pertinent part:

> "Agricultural products grown by the residents of the property may be sold at a roadside stand on the property. Each roadside stand shall sell only products grown by the residents of the property on which the stand is located. Each roadside stand must not exceed a maximum size of 400 square feet and *must also provide, to the Township's satisfaction, a safe means of egress and ingress from a public street as well as sufficient off-street parking* to accommodate customers." (Emphasis added).

3

c. Ordinance § 803.H-15.1.b.(1), pertaining to the agricultural accessory use of "Agricultural Sales of Farm Products," which provides:

> "The sale of food, farm and/or agricultural products to the general public shall be permitted, subject to the following regulations: (1) The minimum lot area shall be 10 acres."

d. Ordinance § 803.H-15.1.b.(4), which provides:

> "Agricultural sales of farm products use is strictly an accessory use which shall be clearly subordinate to principal uses A-1 [Agriculture and Horticulture], A-2 [Intensive Agriculture] and A-6 [Commercial Nursery and Greenhouse]."

e. Ordinance § 803.H-15.1.c.(2), pertaining to Agricultural Entertainment Uses," which provides:

> "The use of a farm for seasonal festivals related to products grown on the farm, craft fairs (including antique shows), municipally-sponsored events, hayrides and horse shows.
>
> . . .
>
> (2) The agricultural entertainment use is permitted as an accessory use only. If any of the conditions to which the agricultural principal use is subject cease to be met, then the agricultural entertainment use shall also cease."

f. Ordinance § 803.H-15.1.c.(3), which requires a minimum lot size of 25 contiguous acres for Agricultural Entertainment Uses.

g. Ordinance § 803.A.A-1, pertaining to the principal agricultural use of Agriculture and Horticulture, which sets limitations on the number of grazing and non-grazing animals.

4

h. Ordinance § 803.A-2, pertaining to the principal agricultural use of Intensive Agriculture, which requires a minimum of 10 acres.[3]

In response, Appellants submitted to the Township a zoning use permit application to operate a "roadside stand for sale of agricultural products grown on[-]site, . . . and . . . agricultural sale of farm products[.]" R.R. at 3. The Township denied the application because it was incomplete. R.R. at 7.

Appellants then submitted an application to the Board appealing the Notice and requesting several variances. R.R. at 9-12. In their statement in support, Appellants specified that they were appealing the Notice with respect to the violations at *subparagraphs b, d, e, and f only*. R.R. at 13. Appellants also sought variances with respect to the violations at subparagraphs b, c, g, and h of the Notice. *Id.* Regarding the violation for ingress/egress and parking, Appellants alternatively proposed "to widen the narrow portion of the driveway" and "to clear up the central portion of the [P]roperty to place 25 marked parking spaces for guests to utilize." R.R. at 14. Neither Appellants' application form nor their statement in support thereof mentions preemption. R.R. at 9-14.

At public hearings before the Board, the Township presented the testimony of Denise Burmester, the Assistant Zoning Officer and Code Enforcement Officer. Burmester testified that in addition to Appellants' residence, there are a number of sheds on the Property, none of which is permitted. F.F. No. 25(e). In fact, the Township has not issued a use permit for the Property, agricultural or

---

[3] To aid in analysis, the language above combines pertinent portions of the Notice and the provisions of the Ordinance that Appellants were charged with violating. The exact language of the Notice can be found at pages 1-2 of the Reproduced Record. The Ordinance can be found at Exhibit A of Appellants' exhibits in support of their land use appeal, or here: https://ecode360.com/NE3758 (last visited June 27, 2025).

5

otherwise, or a building permit for any accessory structures or improvements thereon since at least 2008. F.F. No. 25(f)-(h). Burmester opined that a use permit was required for Appellants' new business use of the Property pursuant to Section 1403.A.1 of the Ordinance. F.F. No. 25(g)-(h); R.R. at 77-78.

Regarding subsection b of the Notice relating to roadside stands, Ordinance § 803.H-15.1.a, Burmester testified that Appellants did not submit to the Township a plan for off-street parking, a traffic plan, or a plan for ingress and egress. F.F. No. 25(i); R.R. at 79. She was aware of complaints that people visiting the Property were parking along Eagle Road, which has "maybe five feet" of shoulder, and she was aware of safety concerns given the bend in Eagle Road at Appellants' driveway. R.R. at 79-80, 102.

Based on Burmester's inspection, less than half of the Property's 8.79 acres was used for livestock, and she did not observe any crop production or other agricultural production. F.F. No. 25(l)-(m); R.R. at 81-82. Burmester estimated that there were over 200 heads of poultry on the Property, in excess of the 150-170 permitted by the Ordinance given the Property's acreage. F.F. No. 25(q); R.R. at 85-87. The Township introduced evidence that its previous Zoning Officer, who has since passed away, observed over 500 heads of poultry on the Property in 2020. F.F. 25(r); R.R. at 86. Burmester confirmed that there are other animals on the Property, but the violation in the Notice was issued with respect to poultry. R.R. at 87-88. It was Burmester's opinion that Appellants' use of the Property was akin to a petting zoo given the public's admittance to view, feed, learn about, and interact with the animals, and thus qualified as an Agricultural Entertainment Use under the Ordinance. F.F. No. 25(n), (p), (t); R.R. at 83-84, 90. An Agricultural Entertainment Use requires a minimum lot size of 25 acres and is only permitted under the

6

Ordinance as an accessory use to agricultural production, which does not occur on the Property. *Id.*

Notably, Counsel for Appellants clarified for the Board that his clients knew they needed certain permits and that the violations in subsections a, c, g, and h of the Notice were "not an issue." R.R. at 103. *See also* R.R. at 229 (Appellants' Counsel stated: "So we are challenging only a few portions of that enforcement [N]otice directly."). Thus, Appellants' Counsel did not cross-examine Burmester regarding those violations. R.R. at 103.

The Township also presented the testimony of Don Meadows, Sewage Enforcement Officer for the Bucks County Department of Health. F.F. No. 15; R.R. at 54. Meadows' testimony centered on the failing septic system for Appellants' house, which is the subject of a separate non-traffic citation.[4]

Beverly Haring, who lives at 645 Eagle Road immediately adjacent to the Property, testified as a witness for the Township and was granted party status. F.F. 12(a); R.R. at 29-30, 51-52. Haring shares a property line with Appellants and her house is approximately 30 feet from that line. F.F. 12(b); R.R. at 30. Haring believed there were approximately 400 chickens on the Property as well as horses, donkeys, ostriches, pigs, goats, sheep, ducks, and rabbits. F.F. 12(c); R.R. at 33-34. Chickens from Appellants' Property appear in Haring's front yard every day, and other animals such as peacocks, sheep, pigs, and ostriches have come onto her property as well. F.F. No. 12(f); R.R. at 33, 46-47. Haring stated that there are significant unpleasant odors and sounds emanating from the Property which have

---

[4] Appellants failed to appear for the non-traffic citation hearing on the septic violation and were found guilty *in absentia*. F.F. No. 16(m)-(n); R.R. at 59. According to Meadows, Appellants' current system is not appropriate for their single-family residential use, let alone the additional use given that members of the public who visit the Property are allowed to use Appellants' bathroom, and the system remains unpermitted. F.F. No. 16(f)-(i); R.R. at 60, 67.

affected her and her family. F.F. No. 12(i)-(j); R.R. at 48-49. She was unaware of any portable toilet facilities on the Property and has observed visitors relieving themselves along her property line. F.F. No. 12(h); R.R. at 47-48.

In addition, Haring has observed at least 100 visitors to the Property on any given Saturday with cars parked along either side of Eagle Road. F.F. No. 12(g); R.R. at 45. She also testified to challenging road conditions along Eagle Road, including a bend and a hill that crests at Appellants' Property, with numerous accidents occurring in the vicinity. F.F. No. 12(e); R.R. at 44.

Debora and Michael Spiro, who live at 1151 Eagle Road and own the property next to Appellants at 725 Eagle Road, also testified and were given party status. R.R. at 117. Mrs. Spiro first remembered animals being on the Property in the spring of 2020 when approximately 200 chickens arrived. R.R. at 144. When Mrs. Spiro went onto the Property in 2020, she observed "a lot" of people on the premises and Appellants selling items such as honey, milk, fruit, and vegetables. R.R. at 146. Neither of the Spiros ever saw any crops being cultivated on the Property. R.R. at 147, 183. Mrs. Spiro observed commercial passenger vehicles such as buses and trucks going to the Property. R.R. at 168.

On another occasion, Mrs. Spiro paid an admission fee to enter the Property and described seeing 20 to 25 cars parked; farm stands with various items for sale; 2 ostriches, 2 cows, horses, 2 donkeys, pigs, 5 to 7 goats, at least 2 dozen ducks, 15 to 20 doves, 12 to 15 turkeys, 2 peacocks, and hundreds of "chickens everywhere"; and a pen where children were allowed to interact with small animals. R.R. at 148-62. Pictures Mrs. Spiro took that day were entered into evidence, including those of signs advertising the prices for admission, riding and feeding the animals, picnic-table use, and birthday parties. R.R. at 151-52. Mrs. Spiro also

8

observed a trampoline, small electric cars, sliding boards, a rock wall, and swings. R.R. at 162. Mrs. Spiro used the restroom in Appellants' house while she was there. R.R. at 163. At no point during her visit was Mrs. Spiro given a tour or any educational information or instruction on caring for the animals. R.R. at 154.

Mr. Spiro testified that he was at his 725 Eagle Road property about five days a week performing renovations, including over weekends. F.F. No. 22; R.R. at 171-72. On Saturdays and Sundays in particular, he observed "[a]n intense amount of cars coming from Newtown trying to access the [P]roperty making that left-hand turn[.]" R.R. at 173; F.F. No. 23(c). The volume of cars and narrow driveway creates a bottleneck of traffic, sometimes spilling out onto Eagle Road, and video Mr. Spiro took of such traffic was admitted into evidence. F.F. No. 23(c), (f); R.R. at 175-77. Mr. Spiro explained that the Property is located at the crest of a hill and that there is no visibility of the driveway before navigating the turn in Eagle Road. F.F. No. 23(a)-(b); R.R. at 173-74. He has also seen vehicles parked in the grass along both sides of Eagle Road, and has had numerous people drive up his driveway and inquire about the Property. R.R. at 177, 367. The Spiros ultimately stopped renovating their property at 725 Eagle Road "[b]ecause [they] felt [they] were not going to be able to sell it with what was going on next door." R.R. at 145; *see also* R.R. at 366-67.

For her part, Mrs. Alfaro testified that Earth's Best began in 2020 with the keeping of chickens and the production of chicken eggs and honey on the Property. F.F. No. 28(a)-(b); R.R. at 224, 258. She admitted that the business has expanded to include the keeping and sale of the other animals outlined above, as well as 33 bee colonies. F.F. No. 28(b)-(e); R.R. at 224-25, 258-59. Appellants' "vegetable garden is not that substantial" and their fruit trees "are still very young[.]"

R.R. at 225. Appellants do allow the public onto the Property to see and interact with the animals and to host birthday parties, all for set fees, and they characterize this activity as "agritourism." F.F. No. 28(i)-(k); R.R. at 226-27, 262, 266. Mrs. Alfaro claimed that they earned more than $10,000 in gross income from their "farming operations" in both 2020 and 2021, but these figures include admission prices. F.F. 28(u); R.R. at 227, 264.

Appellants' farm stand is approximately 360 square feet and is located about 300 feet back from Eagle Road. F.F. No. 28(h); R.R. at 229-30. "[A]s a courtesy," Appellants sell snacks and drinks at the farm stand that are not produced on the Property. F.F. No. 28(g), (v); R.R. at 230, 268. Appellants applied to place portable toilets on the Property for the public's use, but the Township denied the request; therefore, they allow members of the public to use the bathroom inside their residence. R.R. at 244-68.

On cross-examination, Mrs. Alfaro admitted that they did not request a zoning permit before starting either the roadside stand use or the sale of agricultural products use, and that they did not have *any* permits at the time of the hearing. R.R. at 254, 280. She also conceded that the trampoline and rock climbing wall do not serve any purpose in their normal agricultural operations other than keeping children occupied while their parents make purchases. R.R. at 263. Further, Appellants brought pumpkins onto the Property to create a seasonal photo opportunity for guests and may sell pumpkins in the future. F.F. No. 30-31; R.R. at 267. They also plan to grow and sell Christmas trees. F.F. No. 32; R.R. at 322.

Appellants also presented the testimony of Nicolas Biondi, a nutrient management specialist licensed by the Commonwealth and accepted by the Board as an expert in the field of nutrient management. F.F. Nos. 33-35; R.R. at 188-89.

10

Biondi visited the Property and admitted that "[t]here are no crops associated with this farm[.]" R.R. at 201. Biondi created a nutrient management plan for the Property *after* Appellants appealed, and the plan was subsequently approved by the Bucks County Conservation District. F.F. Nos. 37-38; R.R. at 200, 390-91. Biondi believed that Appellants' use of the Property qualified as a concentrated animal operation that is governed by Chapter 3 of the Agricultural Code (Act 38 or ACRE)[5] and that the Ordinance's restrictions on intensity of farm use are preempted by various state laws.[6] F.F. Nos. 36, 40-41; R.R. at 197-200. Notably, there was no mention of preemption during the first Board hearing or even prior to the Township's resting its case. The issue was raised for the first time during Biondi's testimony. *See* R.R. at 205-10.

The Board issued a decision and order denying Appellants' appeal of the Notice, finding that the Township presented substantial credible evidence to support all eight violations. The Board also denied Appellants' request for variances because they failed to present any evidence of hardship and because they could make reasonable use of the Property in compliance with the Ordinance.[7] Finally, the Board concluded that it could not render a decision on the preemption claim because (1) Appellants did not raise a substantive challenge to the Ordinance in their appeal and

[5] 3 Pa.C.S. §§ 311-318. Act 38, "which took effect July 6, 2005, governs local regulation of normal agricultural operations so that such operations are consistent with state policies and statutes." *Off. of Att'y Gen. v. Richmond Twp.*, 917 A.2d 397, 399 (Pa. Cmwlth. 2007).

[6] Biondi's testimony in this regard constitutes an improper legal conclusion and was recognized as such by the Board in its opinion.

[7] Regarding the requested variances, the Board also "conclude[d] that the Township presented ample evidence demonstrating that the current use of the Property results in significant disruption and negative impacts on surrounding properties, on Eagle Road, and on the neighboring community." Conclusion of Law (COL) No. 83. The Board specifically cited the intensity of the use, the density of the animal population, traffic volume and safety issues, noise, odors, insufficient sanitary facilities, and ongoing septic system violations. COL Nos. 84-85.

the issue therefore was not properly advertised as part of the Board proceedings under the Pennsylvania Municipalities Planning Code (MPC);[8] and (2) the preemption claim was beyond the Board's purview.

Appellants appealed to the trial court and the Township intervened. The trial court affirmed without taking additional evidence and the appeal to this Court followed.[9]

## II. Issues

The issues raised by Appellants are: (1) whether the trial court erred in affirming the decision of the Board because there was not substantial evidence to support the violations cited in subsections b, d, e, and f of the Notice;[10] and (2) whether the trial court erred in affirming the Board's decision because the provisions of the Ordinance pertaining to the agricultural use of the Property and the intensity of that use are preempted by state law.[11] The Township counters that Appellants' preemption claim was not properly raised below, pursuant to the MPC, and has therefore been waived.

---

[8] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

[9] The Board failed to file a brief with this Court and was therefore precluded from participating in oral argument. *See* Cmwlth. Ct. Order 11/18/24.

[10] As noted above, Appellants' statement in support of their appeal to the Board specified that they were *only* substantively appealing the violations at subparagraphs b, d, e, and f of the Notice. R.R. at 13. Counsel for Appellants reiterated this during hearings before the Board, explaining that Appellants knew they needed certain permits. R.R. at 103, 229. Because Appellants cannot raise a new issue for the first time on appeal, any challenge to the substance of the Ordinance violations at subparagraphs a, c, g, and h of the Notice has been waived. *See, e.g.*, *Palmer v. Susquehanna Twp. Zoning Hearing Bd.*, 331 A.3d 129, 136 (Pa. Cmwlth. 2025).

[11] Appellants have abandoned their request for variance relief as their brief to this Court does not contain any argument on this issue, and it is not listed in their questions presented. *See 1825 Rt. 309 Allentown, LLC v. Zoning Hearing Bd. of S. Whitehall Twp.*, 309 A.3d 187, 190 n.1 (Pa. Cmwlth. 2024) (finding issue waived for failure to include it in the objector's brief). Thus, we will not consider the variance request on appeal.

### III. Discussion

#### A. Substantial Evidence

"[T]he municipality bears the burden of proving a zoning ordinance violation" in enforcement proceedings. *St. Elmo Dev., LLC v. Zoning Hearing Bd. of City of Allentown*, 320 A.3d 783, 788 (Pa. Cmwlth. 2024). In reaching a decision, the zoning hearing board's findings must be supported by substantial evidence, which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637 (Pa. 1983). Here, Appellants argue that the Township failed to present substantial evidence with respect to the violations cited in subsections b, d, e, and f of the Notice.

#### 1. Notice Subsections b and d

The violation at subsection b of the Notice pertains to the agricultural accessory use of "Roadside Stands for Sale of Agricultural Products Grown on Site." Ordinance § 803.H-15.1.a. Appellants assert that their sale of goods on the Property constitutes a roadside stand within the meaning of the Ordinance because they are *mostly* selling goods produced on the Property, the stand is within the square footage allowance (under 400 sq. ft.), and there is no acreage restriction in this specific provision. Moreover, because Appellants' use falls under the Ordinance provision for a roadside stand, the violation in subsection d of the Notice pertaining to the more intense use of "Agricultural Sales of Farm Products" is not applicable.

Appellants further maintain that the Township failed to meet its burden with respect to the allegation that there is not sufficient off-street parking or a safe means of egress and ingress for the roadside stand. They point to the testimony of Burmester, the Township's own Zoning Officer, which they characterize as

13

admitting that the access and parking is sufficient for their roadside stand use. *See* Appellants' Br. at 14; R.R. at 101-02. The Township relied solely upon the anecdotal testimony of two neighbors to prove the parking and egress and ingress issues, rather than presenting expert evidence by employing an engineering firm or commissioning a traffic study. Appellants appear to claim that this anecdotal evidence is insufficient to meet the Township's burden, but fail to provide any supporting legal citation. We disagree.

Based on the credible testimony and evidence of record, Appellants' use of the Property goes well beyond the typical roadside stand from which a property owner sells eggs, produce, or flowers grown on-site. Instead, Appellants indisputably sell a wide variety of crops *not* grown on the Property, including fruit and produce, as well as commercially bottled drinks and snacks. Appellants' own expert testified that there were no crops grown on the Property. Appellants also admittedly sell live animals, which can be slaughtered upon request, and live animals for companionship such as rabbits and guinea pigs, none of which are contemplated in the Ordinance provision for a roadside stand. In short, "[t]his is a full[-]scale commercial use," R.R. at 421, more akin to the Agricultural Sales of Farm Products use, which requires a minimum lot area of 10 acres, rather than a roadside stand.

As for the parking and ingress and egress issues, the Township presented not just witness testimony but photographs and videos that were entered into evidence showing: parking along Eagle Road where there is no shoulder; traffic congestion spilling onto Eagle Road due to the narrowness of Appellants' driveway; and reduced visibility and attendant safety concerns related to the sharp turn and hill on Eagle Road near Appellants' driveway. The Board specifically found the testimony of the Township's witnesses to be "credible, probative and relevant," F.F.

14

No. 26, and Appellants' argument essentially challenges this credibility determination. As we have repeatedly explained,

> [t]his Court may not substitute its interpretation of the evidence for that of the Board, the fact-finder in this case. The Board is the sole judge of the credibility of witnesses and the weight to be afforded their testimony. Thus, it is the Board's function to weigh the evidence before it. If the record contains substantial evidence, this Court is bound by the Board's findings that result from the resolution of credibility and conflicting testimony.

*Victory Gardens, Inc. v. Warrington Twp. Zoning Hearing Bd.*, 224 A.3d 1110, 1115 (Pa. Cmwlth. 2020) [quoting *MarkWest Liberty Midstream & Res., LLC v. Cecil Twp. Zoning Hearing Bd.*, 102 A.3d 549, 555 (Pa. Cmwlth. 2014)].

Appellants also take the testimony of Burmester out of context. When pressed during cross-examination, Burmester stated that *if* Appellants were *just* using the Property as "a roadside stand where people come in and purchase and leave," then there would be sufficient parking, and perhaps we would not have the same issues with ingress and egress. R.R. at 101. However, the totality of the evidence establishes that Appellants are making a higher use of the Property than simply a roadside stand as they are inviting the public to remain on the Property for an extended period through the provision of picnic tables and recreational equipment, hosting birthday parties, etc. Therefore, we find that Appellants' arguments regarding Notice subsections b and d lack merit.

### 2. Notice subsections e and f

With respect to the violations at subsections e and f of the Notice, Appellants argue that their use of the Property does not fall within the Ordinance's

strict definition of the phrase "Agricultural Entertainment Use."[12]  The Ordinance defines this term as: "The use of a farm for seasonal festivals related to products grown on the farm, craft fairs (including antique shows), municipally-sponsored events, hayrides and horse shows."  Ordinance § 803.H-15.1.c.  At no point has the Township ever accused Appellants of engaging in any of these specifically enumerated activities, and the evidence in the record fails to support such a conclusion.  Appellants note that the Board is required to adhere to the actual words of the Ordinance, to enforce the Ordinance "as written without imposing its own concept of how [the Ordinance] should have been drafted."  *Riverfront Dev. Grp. LLC v. City of Harrisburg Zoning Hearing Bd.*, 109 A.3d 358, 365 (Pa. Cmwlth. 2015).  Appellants maintain that there is no evidence in the record, let alone substantial evidence, to support the conclusion that they use the Property for seasonal festivals, craft fairs, hayrides or horse shows.  The Board abused its discretion and went beyond its authority under the MPC by interpreting the Ordinance to modify or amend its terms in order to impose its own concept of what the Ordinance should say.  *Greth Dev. Grp., Inc. v. Zoning Hearing Bd. of Lower Heidelberg Twp.*, 918 A.2d 181, 189 (Pa. Cmwlth. 2007).

Appellants claim that they use the Property simply as a livestock farm, with a concentration on raising poultry and producing eggs, with the roadside stand as an accessory use.  *See, e.g.*, R.R. at 236-37 (Mrs. Alfaro explained that she believes "raising livestock as [an] agricultural use" was the principal use of the Property).  However, even if their use of the Property qualified as a "petting zoo,"

---

[12] As stated earlier, Agricultural Entertainment Uses are permitted in the CM Zoning District on lots of at least 25 acres, which the Property does not meet.  Ordinance § 803.H-15.1.c.3. Agricultural Entertainment Uses are only permitted as accessory uses where the principal use of the property is a permitted agricultural use.  Ordinance § 803.H-15.1.c.2.

16

this term is not listed in the Ordinance's definition of Agricultural Entertainment Uses, nor is a petting zoo similar to the uses that are listed. Thus, Appellants assert that the Board abused its discretion by unlawfully expanding the Ordinance to include a petting zoo as an Agricultural Entertainment Use.

Again, the record clearly demonstrates that Appellants' use of the Property goes way beyond that of simply a livestock farm as they: invite the public onto the Property for an admission fee; charge additional fees to interact with or feed the animals; and charge further fees to rent picnic tables, ride small, motorized vehicles, or host birthday parties. Appellants also installed recreational equipment on the Property—such as a trampoline, swing set, sliding board, and rock wall—which Mrs. Alfaro admitted is unrelated to any agricultural purpose. In short, Appellants are operating a petting zoo as their principal use of the Property.

Further, Appellants assert an exclusionary argument, meaning that because a petting zoo is not specifically included in the Ordinance's definition, it is excluded and cannot be considered an Agricultural Entertainment Use. This goes against the well-established principle that requiring a zoning ordinance to state every conceivable use "would negate the deference to which a zoning hearing board is entitled in the interpretation of its municipality's zoning ordinances." *Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.*, 207 A.3d 886, 902 (Pa. 2019). Here, after considering all of the evidence presented, the Board concluded that Appellants' use of the Property was analogous to the uses listed as Agricultural Entertainment Uses and that it best fit within that classification. The Board's "interpretation of its own zoning ordinance is entitled to great weight and deference" given its

"knowledge and expertise in interpreting that ordinance." *Weiler v. Stroud Twp. Zoning Hearing Bd.*, 300 A.3d 1121, 1127 (Pa. Cmwlth. 2023) (citations omitted).[13]

### B. Preemption and Waiver

Lastly, Appellants argue that the Ordinance provisions for which they were cited in subsections g and h of the Notice are preempted by state law.[14] These sections of the Ordinance pertain to, respectively, limitations on the number of grazing and non-grazing animals, and the requirement that intensive agriculture be conducted on at least 10 acres. We find, however, that the Board correctly determined that Appellants' preemption claim has been waived because it cannot be raised outside the exclusive procedure set forth in the MPC.

Appellants' claim of preemption is in reality a substantive validity challenge. They are alleging that Sections 803.A.A-1 and 803.A-2 of the Ordinance are invalid because they conflict with state law in the area of farming and exceed the municipality's statutory zoning power. Section 916.1 of the MPC provides,[15] in pertinent part:

> (a) A landowner who, on substantive grounds, desires to challenge the validity of an ordinance or map or any provision thereof which prohibits or restricts the use or

---

[13] While not directly on point, it bears noting that in the context of validity challenges, this Court has repeatedly held: "where an ordinance does not mention a specific intended use, we must determine whether a reasonable interpretation of the ordinance reveals another zoning classification in which that particular use may be allowed." *Bloomsburg Indus. Ventures, LLC v. Town of Bloomsburg*, 242 A.3d 969, 979 (Pa. Cmwlth. 2020) [quoting *Ficco v. Bd. of Supervisors*, 677 A.2d 897, 899 (Pa. Cmwlth. 1996)].

[14] Appellants agree that if Ordinance § 803.A.A-1 is valid, they are only permitted to have a maximum of 169 chickens on their 8.79 acre Property. There is overwhelming evidence in the record demonstrating that Appellants are in violation of this limit, as there are "chickens everywhere." R.R. at 157.

[15] Added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10916.1(a).

18

development of land in which he has an interest shall submit the challenge either:

> (1) to the zoning hearing board under section 909.1(a); or

> (2) to the governing body under section 909.1(b)(4), together with a request for a curative amendment under section 609.1.

> . . . .

> (c) The submissions referred to in subsection[] (a) . . . shall be governed by the following:

> > (1) In challenges before the zoning hearing board, the challenging party shall make a written request to the board that it hold a hearing on its challenge. The request shall contain the reasons for the challenge. . . .

53 P.S. § 10916.1(a) & (c)(1).

It is well established that "Section 916.1 of the MPC provides the **exclusive** mechanism for challenging the validity of a zoning provision." *Urey v. Zoning Hearing Bd. of City of Hermitage*, 806 A.2d 502, 506 (Pa. Cmwlth. 2002) (emphasis in original). *See also Borough of West Mifflin v. Zoning Hearing Bd. of Borough of West Mifflin*, 452 A.2d 98, 99-100 (Pa. Cmwlth. 1982);[16] *Hammermill Paper Co. v. Greene Twp.*, 395 A.2d 618 (Pa. Cmwlth. 1978). A municipality must have sufficient notice of a substantive validity challenge because it is entitled to present its own version of the reasons for the challenged regulation, and may utilize the municipal solicitor or retain an independent attorney to present its defense. Section 916.1(c)(3)-(4) of the MPC, 53 P.S. § 10916.1(c)(3)-(4); *Borough of West Mifflin*, 452 A.2d at 100. For these reasons, this Court has repeatedly held that

---

[16] The provision of the MPC cited in *Borough of West Mifflin*, 53 P.S. § 11004, has since been repealed and can now be found at Section 916.1 of the MPC, 53 P.S. § 10916.1.

19

substantive challenges to zoning ordinances are waived if not raised in writing to the board prior to the hearing, pursuant to Section 916.1 of the MPC. For example, in *Urey*, a case similar to the present matter, we explained that

> [i]n failing to proceed under [Section 916.1's] terms, and in failing to seek a permit for construction, [the appellant] has forfeited his opportunity to challenge the ordinance. Public policy is not well served by allowing one to build in violation of an ordinance, wait until an enforcement action is commenced by the municipality, and then assert the unconstitutionality of the ordinance. In short, a procedure exists to challenge the constitutionality of an ordinance on the basis that it works as a total exclusion of a legitimate use; [the appellant] should have availed himself of this procedure, but he did not.

806 A.2d at 506. *See also Lake Adventure, Inc. v. Zoning Hearing Bd. of Dingman Twp.*, 440 A.2d 1284, 1287 (Pa. Cmwlth. 1982) (in appeal of denial of special exception, this Court found that substantive challenges to the zoning ordinance were waived when raised for the first time in the appellant's brief to the zoning hearing board); *Jones v. Hamilton Twp. Zoning Hearing Bd.* (Pa. Cmwlth., No. 1526 C.D. 2012, filed Apr. 4, 2013) (property owner could not raise exclusionary challenge to zoning ordinance via appeal of an enforcement action when not properly raised below).[17] *See also Grant v. Zoning Hearing Bd. of Twp. of Penn*, 776 A.2d 356, 361 (Pa. Cmwlth. 2001) (explaining that substantive challenge to zoning ordinance must first be raised before the zoning hearing board).

Here, Appellants' application to the Board and written statement in support thereof make no mention of preemption and do not request a substantive validity hearing. *See* R.R. at 9-14. The only two boxes checked on the application

---

[17] This unreported opinion of the Court is cited only for its persuasive value given its similarities to the instant matter. Pa.R.A.P. 126(b)(1); 210 Pa. Code § 69.414(a).

are those for an appeal from an enforcement notice and for variances; the box for a challenge to the validity of the Ordinance is left unchecked. R.R. at 9. Appellants also repeatedly responded "N/A" on sections of the application inquiring about a challenge to the validity of the Ordinance. R.R. at 11. Further, Appellants did not raise the preemption issue during the first night of testimony before the Board, or even prior to the Township resting its case. Preemption was first broached during the testimony of Appellants' nutrient management expert.

Appellants' failure to follow this procedure is compounded by the fact that the Ordinance is a joint zoning ordinance impacting multiple townships, and neither Newtown Township nor Wrightstown Township was consulted or given notice of Appellants' preemption claim. The MPC also entitles residents and other interested parties to public notice that a challenge has been made seeking to invalidate portions of the ordinance. Section 916.1(e) of the MPC, 53 P.S. § 10916.1(e) ("Public notice of the hearing shall include notice that the validity of the ordinance or map is in question and shall give the place where and the times when a copy of the request, including any plans, explanatory material or proposed amendments may be examined by the public."). Allowing Appellants to bypass the required process would deprive other residents, interested parties, and municipalities of their rights under the MPC. Because Appellants failed to properly raise their preemption claim pursuant to the procedure outlined in the MPC, it has been waived and we need not address it further.

## IV. Conclusion

In sum, there is substantial evidence in the record to support the Board's determination that Appellants violated the Ordinance. Moreover, Appellants waived

21

their preemption claim because it was not properly brought as a substantive validity challenge pursuant to the MPC.  Accordingly, we affirm.

 

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

Judge Covey did not participate in the decision for this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Waldo Alfaro and Rosie Alfaro,     :
                  Appellants     :
                                     :
          v.                     :    No. 502 C.D. 2023
                                       :
Upper Makefield Township Zoning     :
Hearing Board                         :

# **O R D E R**

AND NOW, this 30th day of June, 2025, the Order of the Court of Common Pleas of Bucks County is AFFIRMED.

 

                                              —————————————————

                                              **BONNIE BRIGANCE LEADBETTER,**
                                              President Judge Emerita